March 1,　}
　1915.　}

## OPINION OF THE JUSTICES.

It is within the power of the legislature to exempt certain classes of property from taxation by omitting them from the list of taxable estate, or by specifically exempting them.

A statute which excludes from the list of taxable estate bonds, notes, interest-bearing credits, and corporate stock, and imposes upon the moneys received throughout the preceding year as interest or dividends thereon a tax at the same rate as that levied upon other property in the taxing district, provides a proportional and reasonable assessment which is not invalid on the ground that it results in double taxation.

The taxation of a shareholder for dividends paid by a corporation which is itself taxed for the property represented by the stock is not objectionable as double taxation.

A property tax levied upon moneys received during the preceding year as interest or dividends on bonds, notes, and corporate stock is not invalid because in certain of its features it resembles an income tax.

An act of the legislature imposing a tax on the interest of bonds and notes is in conflict with the federal constitution if interest-bearing securities of the national government are included in its provisions.

February 5, 1915, Hon. Edwin C. Bean, speaker of the house of representatives, acting in obedience to a resolution of that body, requested the opinions of the justices of the supreme court upon the question whether a pending bill, entitled "An act relating to the taxation of personal estate," would be valid if enacted, and more particularly "whether any constitutional provision would be violated by imposing a tax at the uniform rate upon money received as interest or dividends upon the classes of securities mentioned in

section 1, and exempting from taxation the securities themselves."
Sections 1 and 2 of the bill read as follows:

"Section 1. Personal estate liable to be taxed shall include money received during the year preceding the first day of April by each person as interest or dividends upon bonds, notes, interest-bearing credits, certificates of shares or interest or ownership in corporations, associations, joint-stock companies, trusts, and other organizations, and stocks not taxed to him, except dividends received from money deposited in New Hampshire savings banks.

"Sect. 2. Subdivisions I, II, III, IV, and V, of section 7, of chapter 55, of the Public Statutes, are hereby repealed."

*To Hon. Edwin C. Bean, Speaker of the House of Representatives:*

The undersigned, justices of the supreme court, in reply to your request of February 5, made by direction of the house for our opinion as to the constitutional validity of certain proposed legislation, respectfully answer as follows:

In the application for our opinions, no particular ground of objection to the validity of the proposed enactment is pointed out. We have therefore considered all such objections as have occurred to us as possible grounds for constitutional invalidity and submit our conclusions thereon.

1. So far as the inquiry relates to the power of the legislature to exempt certain classes of property from taxation by omitting them from the list of taxable estate or specially exempting them, it is answered by our response to the same inquiry presented to us by direction of the house of representatives, January 20, 1913, in which we stated our opinion to be that the legislature had such power. House Jour. 1913, *p.* 180; *Opinion of the Justices,* 76 N. H. 609, 611, 612. The repeal of subdivisions I, II, III, IV, and V, of section 7, chapter 55, of the Public Statutes, would result in the omission of the classes of property therein described from the list of taxable estate and their consequent exemption from appraisal and assessment for taxation. The power of the legislature to make such exemption cannot now be regarded as open to investigation.

2. The particular question submitted is "whether any constitutional provision would be violated by imposing a tax at the uniform rate upon money received as interest or dividends upon the classes of securities mentioned in section 1" of the proposed act "and exempting from taxation the securities themselves." We understand that by the expression "the uniform rate" is intended the same rate

in proportion to value as is imposed upon other property in the taxing district. So understood, the tax apparently would be both proportional and reasonable, and consequently within the power of the legislature "to impose proportional and reasonable taxes." *Opinion of the Court*, 4 N. H. 565, 567, 568. As the tax is not limited to a particular class of persons, if it is not to be imposed at a fixed arbitrary rate or upon a valuation different from that of other property, it would not appear to be within any of the objections found fatal to the five-mill tax proposed in 1911 (*Opinion of the Justices*, 76 N. H. 588), or to the two per cent tax upon the gross receipts of railroad expressmen, imposed by chapter 63 of the General Laws. *State v. Express Co.*, 60 N. H. 219.

3. As the securities themselves are exempted from taxation, there can be no question of direct double taxation to the same individual; and so far as money at interest is concerned, the element of double taxation involved in the taxation of the debt to the creditor, and the property in which the loan is invested by the debtor to him, does not render the taxation of either illegal. *Glidden v. Newport*, 74 N. H. 207; *Morrison v. Manchester*, 58 N. H. 538, 551, 552. If the taxation to the creditor of the principal in the hands of the debtor is not illegal, it is very clear taxation of the interest paid over to and in the hands of the creditor cannot be.·

Section 1 of the proposed act would include for taxation dividends paid by corporations in which the property represented by the stock is taxed to the corporation; and the question arises whether the tax is objectionable as double taxation. Taxation of the shares in a corporation to the stockholder and of the corporate property to the corporation has always been regarded in this jurisdiction as double taxation (R. S., c. 42, s. 1; P. S., c. 58, s. 1; *Smith v. Burley*, 9 N. H. 423; *Smith v. Exeter*, 37 N. H. 556; *Kimball v. Milford*, 54 N. H. 406; *Chesire County Tel. Co. v. State*, 63 N. H. 167), although taxation of the loan to the creditor, and of the property purchased with the money loaned and mortgaged to secure it, to the debtor, has not been so construed. In sustaining this distinction, it has been said: "For the purpose of taxation under existing law, somebody is the owner of the land and somebody is the owner of the money at interest." *Morrison v. Manchester*, 58 N. H. 538, 553, 554. Whether, or not, this is sound ground upon which to justify the taxation of credits, its assertion rests upon the underlying principle that double taxation does not exist if the property taxed in each instance is not the same. "It is a fundamental principle in taxation that the same

property shall not be subject to a double tax, payable by the same party, either directly or indirectly." *Opinion of the Justices*, 76 N. H. 588, 590; *Cheshire County Tel. Co.* v. *State*, 63 N. H. 167; *Nashua Savings Bank* v. *Nashua*, 46 N. H. 389; *Smith* v. *Burley*, 9 N. H. 423, 427; Cool. Tax. 165.

The taxation of personal property may sometimes necessarily involve duplicate taxation to a certain extent. Cool. Tax. 28, 158, 161. The materials of a newly erected building, taxed as real estate April 1, may and probably did go to swell the average stock in trade of the dealer therein for the preceding year; the taxation of live-stock indirectly affects the value of the farm already taxed as real estate upon which the stock was grown; the taxation of the products of a manufacturing establishment affects the business of manufacturing otherwise taxed. But such indirect influence is not the double taxation which is unreasonable within the meaning of the constitution. To be of such a character that it can be declared unreasonable as matter of law, it must appear that the same property has been necessarily made "subject to a double tax, payable by the same party, either directly or indirectly." Authorities above cited.

If the corporation has made a profit and has paid no dividend, the profit forms part of its taxable estate for appraisal and assessment. The capital invested in a business, and the income or profit derived from carrying on the business, are entirely different things. *Wilcox* v. *Commissioners*, 103 Mass. 544. If the corporation has paid out the profit to its shareholders as dividends, the corporation pays no tax thereon because such sums already paid away are not present for appraisal and assessment. Not being taxed to the corporation, the taxation of the sums received by the stockholders involves no element of double taxation. The dividends which it is proposed to tax to their recipients, not being taxed to the corporation, are open to taxation to the owners.

In principle, such has always been the law and the practice in the taxation of money on hand. No distinction has ever been made as to its source, whether from the products of the farm, corporate enterprise, or interest on money loaned. The necessity for such a distinction has never been suggested. Money on hand has been taxed as property in the hands of the owner separate from the property producing it. The proposed act rests upon the same principle, taxing the corpus to the corporate trustee or legal owner, the profits paid over to the equitable owner into whose hands they have come.

The only change in existing law is the selection of money received

during the year, instead of money on hand, as the measure of the property to be taxed. "To establish the rules by which each individual's just and equal proportion of a tax shall be determined is a task of much difficulty, and a very considerable latitude must be left to the legislature on the subject." This determination rests "in the sound discretion of the legislature. . . . Within the limits of this discretion, as to the selection of proper subjects for taxation . . . the authority of the legislature is without question supreme." *Opinion of the Court*, 4 N. H. 565, 570. Whether money on hand or money received during the year shall be taken as the measure of the property to be taxed is a legislative, not a judicial, question.

4. It may be said that the proposed tax is in effect an income tax. An income tax is generally understood to be a tax at an arbitrary rate—an excise tax. It has even been held not to be a property tax (*Waring* v. *Savannah*, 60 Ga. 93; *Glasgow* v. *Rowse*, 43 Mo. 479), and to be a direct tax under the federal constitution. *Pollock* v. *Trust Co.*, 157 U. S. 429; *S. C.*, 158 U. S. 601. But the fact that this tax in certain of its features resembles an income tax does not place it beyond the legislative power of classification. Since 1881, the net yearly income of ships and vessels engaged in the foreign carrying trade has been taxable as personal estate. P. S., *c.* 55, *s.* 13; *Ib.*, c. 56, *s.* 13; Laws 1881, *c.* 79.

The failure to tax all incomes would not be a constitutional objection. The taxation of a class only would present the situation of our present tax laws, which do not tax all classes of property. *Thompson* v. *Kidder*, 74 N. H. 89, 97, 98.

From 1784 to 1903, the constitution permitted the assessment of taxes "on polls and estates in the manner that has heretofore been practiced." Const., *art.* 6. Under this language, it has been said that the power to tax was "confined to persons and estates." *State* v. *Express Co.*, 60 N. H. 219, 236; *Wyatt* v. *Board of Equalization*, 74 N. H. 552, 557; *Opinion of the Justices*, 76 N. H. 588, 591. But there has been no definition of "estates" which would limit the power to the taxation of visible, tangible property. On the contrary, it has been specifically held that under the constitutional grant of power to tax, "every species of property within the state is taxable" (*Franklin-Street Society* v. *Manchester*, 60 N. H. 342, 347), and that "every species of possession" is taxable. *Curry* v. *Spencer*, 61 N. H. 624, 630. Credits, the right to receive money of the debtor, are held taxable as a species of property. *Morrison* v. *Manchester*, 58 N. H. 538; *Opinion of the Justices*, 76 N. H. 588, 589.

Under the language of the constitution prior to 1903, support for an income tax could be found from the history of taxation before its adoption and the expression that the assessment may be made upon persons and estates in the manner heretofore practiced. *Opinion of the Justices,* 76 N. H. 588, 592, 593, 594; Report Tax Comm. 1908, "Assessment Acts," 187–241. There is evidence, however, from the discussions in the constitutional convention of 1902, that the word "estates" was understood to have been construed as of limited application, and it was proposed to amend the constitution, "so that the legislature, instead of being limited as it has been held to be theoretically in imposing taxes, could have the power to impose in its discretion any kind of tax under heaven or known among civilized men." Jour. Const. Conv. 1902, *p.* 597. The amendment proposed to effect this purpose was that, in addition to polls and estates, the legislature should be authorized to tax all classes of property. The question submitted to the people was: "Do you approve of empowering the legislature to impose taxes, not only upon polls and estates, but also upon other classes of property?" This proposition was adopted. Discussion having arisen in the convention whether the language was broad enough to cover inheritance taxes, these were specially enumerated; and the amendment having been adopted specifically authorizing such taxes, it was held to be immaterial that taxes of that class were of necessity disproportional. *Thompson* v. *Kidder,* 74 N. H. 89. Income taxes, or taxes of that nature, were not specifically named; and to bring such taxes within constitutional limitations, such taxes must be laid with due regard to proportion, *i. e.,* at the same rate in proportion to the value of the property taxed as the tax upon other property.

That the people in 1912 failed to adopt a constitutional amendment permitting the taxing of credits at a less rate than other property, even if the proposed method of taxation approximates the same result, is immaterial upon the legal question of power. In 1889, the constitutional convention refused to submit to the people an amendment conferring upon the legislature power to divide towns into voting precincts. The convention of 1902 submitted such a proposition which was not adopted; but the justices of this court, in 1905, were unable to find any ground upon which to advise the house of representatives that the legislature was without power to create such precincts. *Opinion of the Justices,* 73 N. H. 618. The power to divide towns into precincts for voting purposes has not been lost by its non-exercise since 1784. Neither can it be said that the power

to classify incomes as a subject of taxation has been lost by its exercise during that period only in 1881 and.1865.    We are not prepared to say that an income tax is necessarily in conflict with the constitution.    "An equal division of the public expense may be made by a property tax and an income tax.    The modes of division may be numerous and various.    If the result is an equal division, it is taxation."    *Robinson* v. *Dover*, 59 N. H. 521, 527, 528.    It is unnecessary now to express an opinion as to the validity of the taxation of incomes, for the proposed tax merely follows and taxes in the hands of the stockholder property which would have been taxed to the corporation if it were not distributed as dividend.

5. In the opinion given by the justices of this court, March 19, 1866, as to the validity of the act of July 1, 1865, which resembled the act proposed in its income-taxing features, it was considered that the law was not obnoxious to the state constitution.    But the justices felt themselves compelled by sundry federal decisions to advise that so much of the act as was apparently intended to tax income from securities of the national government was in violation of the constitution of the United States.    *Opinion of the Justices*, 53 N. H. 634.    The same objection would lie to the proposed act. The objection doubtless at this time would be of little practical importance and could be avoided by exempting interest received from securities of the national government.

Whether it is necessary to repeal all the subdivisions of the section enumerated in the proposed act in order to effect the legislative purpose is a question upon which our advice is not asked; whether it is wise to do so is not a question of law.

6. An act of the legislature is not to be declared void unless clearly beyond legislative power.    In our examination of this question, necessarily made without the assistance of argument from counsel, we have not been able to discover any substantial ground upon which we would be justified in advising that the proposed act is clearly in violation of any provision of the state constitution.    Our answer therefore is that, except in so far as the act could be construed under the federal decisions as an attempt to impose state taxation upon securities of the United States, the proposed legislation is within the power of the legislature, and if enacted will be valid.

Frank N. Parsons.
Reuben E. Walker.
John E. Young.
William A. Plummer.

March 1, 1915.

In response to an inquiry by the house of representatives in 1911, relating to the constitutionality of a graduated inheritance tax, the justices stated that as they were unable to agree they thought that they ought not to render their separate opinions. *Opinion of the Justices*, 76 N. H. 597, 599.    In taking this course, several precedents were followed.   A similar situation is here presented; and upon further consideration it is now thought (and rightly, as it seems to me) that the duty laid upon us by the constitution cannot be avoided in that manner.   Our opinions are required by those who are entitled thereto, and must be given.   Const., *art.* 73 [74].   As in the present instance my views are opposed to those expressed by my associates, it is incumbent upon me to state wherein I deem the proposed legislation to be in conflict with the constitution.

The conclusion of my associates that the proposed levy would not be double taxation of stockholders, if it were a property tax, seems to me to be founded upon fallacious reasoning.   But I spend no time upon this, because it is my view that what is proposed is not a property tax, but an income or privilege tax, which is wholly without constitutional warrant.

It is important that at the outset the fundamental difference between income and property be stated; and then as we go on, it will be more plainly seen how and why the attempt to treat the two things as one must necessarily fail.   A man's property is the amount of wealth he possesses at a particular moment, while his income is the amount of wealth obtained during some specified period.   The two are measured by different standards.   One is measured by amount and present possession.   The other is determined by receipts, and quantity and time are necessary elements of the measure employed.   In the measure of property, present ownership is an essential element, and lapse of time can have no place.   In the measure of income, lapse of time is an essential element, and present possession can have no place.   Each is measureable, but a common measure cannot be applied to both.   The two are as incommensurate as a line and an angle.

It is at once conceded that the people might provide in their constitution for the use of both measures in laying taxes; that is, there might be classification of property, rights, and privileges for the purpose.   But the question here is, not what a constitution might provide, but what ours does provide.

The form of taxation in vogue in this state ever since the adoption of the constitution, or since its force was appreciated, is an annual

tax upon the amount of property owned at a fixed date, or upon the average value throughout the year. The plan here proposed is entirely different. It would levy the tax upon the gross receipts from certain sources, without regard to the amount of estate possessed by the taxpayer, either on the taxing date or the average amount. It is an income tax, as distinguished from one levied upon the value of estate. It is impossible to combine the two and produce as a result an equal and proportional tax. *Opinion of the Justices,* 76 N. H. 588, 595.

Under this bill, the tax is to be levied upon the devolution of the interest on money from the debtor to his creditor, or the passage of the dividend from the corporate trustee to the beneficial owner thereof. It is imposed, not because the taxed person has such property in possession and enjoyment, but because he received it during the tax year from the specified source. If he keeps it after that year, he is not taxed for it again in the succeeding year, while all other taxpayers are assessed annually. He is never taxed, under the proposed statute, because he has the property, but he is taxed because he received it. This is not a tax upon property, but upon its transfer from hand to hand. It is not an annual tax in any real sense. It is a tax upon the event. It is levied but once, because the event occurs but once. It is impossible to correlate such a tax with one laid annually upon property; and before it could be imposed, it would require a constitutional amendment as specific as that which permits a tax upon property passing by will or inheritance.

It is said that an income is property, that it can be assigned, that its value for the past year can be ascertained, and that therefore it is taxable like other property. Precisely the same argument, in all respects, can be urged as to property passing by will or inheritance. It is property, it can be sold, its value is ascertainable. Yet it is held that a tax upon property so passing is not a property tax within the constitutional rules as to equality and proportionality. If a tax levied upon property because it has passed from ancestor to heir is a privilege tax, or a tax upon the event, equally so is one levied upon property because it has passed from debtor to creditor. If, as was said in *Thompson* v. *Kidder,* 74 N. H. 89, 98, there is a disproportion "inherent in the tax itself" when inheritances are taxed, the same is true when interest and dividends are levied upon. "All the decisions agree  ᾿  .  .  that an inheritance tax is not a proportional distribution of the public expense upon the property of the taxing district." *Ib.* 93. And it may be added, that until the

foregoing opinion was filed there was a like consensus of judgment as to the nature of a tax upon incomes. "A tax on incomes is not a tax on property, and a tax on property does not embrace incomes." "Property, as the term is used in reference to taxation, means the corpus of an estate or investment, as distinguished from the annual gain or revenue from it." Black Income Taxes (2d ed.), ss. 188, 199.

It is the law of this state that taxes upon property passing by will or inheritance are necessarily disproportional in the constitutional sense, and that they are permitted only by express constitutional provision. It seems to me that all other taxes based upon the passing of property must fall into the same class. I have yet to see the distinction between them. If there be one, it ought to be stated; and until it is stated, it seems reasonable to conclude that it does not exist.

The argument has been advanced that the tax is not upon the event, but that the event is merely used to describe what property is taxable. Here, again, the argument is equally applicable to inheritances. If the event merely describes what property is taxable, and therefore taxes laid because of the event are property taxes which can be assessed proportionally, then there is no necessary disproportion in an inheritance tax. If disproportion is not a necessary element of such a tax, then the grant of power to so tax was not a grant of power to create disproportion, and the inheritance tax at the fixed rate is void; for if it is capable of proportionality, it must be so laid. Either the inheritance tax decisions are wrong, or else the majority opinion in this matter is erroneous. It is impossible to reconcile the two propositions.

Taxation upon the average value of stocks in trade has been suggested as affording a precedent for this tax upon total income received throughout the year. The cases are in no way parallel. The appraisal of stock in trade is upon a reasonable valuation of the taxpayer's estate. But if he were to be taxed on the total value of all the stock which passed through his hands during the year, the case would be otherwise. No one would for a moment contend that a tax levied on such a basis could be made equal and proportional with taxes upon property owned on April 1. Yet this is what is proposed here.

A tax levy consists of several successive steps. All must be uniform, or the result is not an equal and proportional tax. *State v. Express Co.*, 60 N. H. 219, 241. The procedure must be uniform

as to every element which may affect the amount of the tax laid. To tax one class upon estate owned April 1, or on the average amount owned during the year, and another class upon all that has come into possession throughout the year, is to vary an essential element of the tax. This plain proposition has always been recognized before, and has uniformly led to the conclusion that income and privilege taxes are not to be classed with those upon a valuation of property. The static quality of property is involved in the annual property tax. What one has is taxed once a year. But as to incomes, the essential quality is not static, but dynamic. They are taxed because they have been generated. Property is taxed because it exists; but incomes are taxed because they have moved. This is the fundamental difficulty with the proposed legislation.

It seems to me that this difficulty is ignored in the majority opinion. It is there admitted that, so far as there is an attempt to tax incomes as property, the rule of proportionality must be followed; but the assumption that this rule can be satisfied by merely applying the property-tax rate is erroneous. There must be not only the same rate, but the same measure of taxable estate. Incomes received during the year, and still owned on April 1, might be taxable as property under the uniform rule. But when this rule is departed from, and the amount received throughout the year is taken as the measure, we pass from the realm of property taxation to that of taxing incomes.

The majority say that the proposed law "merely follows and taxes in the hands of the stockholder property which would have been taxed to the corporation if it were not distributed." If this were what the proposed law provided, it might not be open to objection upon constitutional grounds. But it goes very much beyond this. As before pointed out, it taxes the dividends because they have been paid. It makes no distinction between what would and what would not have been taxable if retained by the corporation. The taxability of the dividend as property is not made greater or less by its transfer. If it would have been taxable to the corporation as money on hand April 1, it will be equally taxable in the hands of the stockholder on that date. If it is not taxable to the stockholder who has it in possession, neither would it be taxable if retained by the corporation. As before stated, the proposal is to tax it because it has moved; and this tax upon its devolution in no way affects its taxability or non-taxability as property.

If the provision of the proposed law were that "dividends and in-

terest received during the year shall be taxed to the recipient, provided they would have been taxable to the payor if retained by him until April 1," it would express what the majority claim for it. But there is no such proviso. It is not an attempt to prevent property escaping taxation by the transfer, but, on the contrary, it is a proposal to levy a tax which is added because of the transfer.

It is said that whether money on hand or money received during the year shall be the measure of property to be taxed is a legislative question. But the question here is not whether one method or the other may be used, but whether in levying one proportional and equal tax there can be a partial use of each measure; whether one measure for determining the amount of estate may be used as to one class of property, and a different one as to another; whether there must be a common measure, or whether two different and unequal measures may be employed at the same time. It is always to be borne in mind that the majority do not sustain the levy as an income tax, but as a tax upon property. If all the money which has passed through a man's hands as interest throughout the year could be taxed to him as his property, when others were taxed only on the value of their estate on April 1, the same method might be applied to any other class of property. The trader could be taxed for all the goods and chattels passing through his hands. The wholesale milk dealer, whose stock in trade is turned once in twenty-four hours, could be compelled to pay a tax 365 times as great as that paid by the owner of immobile property. Such a so-called measure of taxability is manifestly unequal and must result in a disproportional tax.

Considering these incomes as property distinct and separate from the property which produces them, and attempting to tax them because of their being property and not merely because of the event of their receipt, how must their quantity be measured? Plainly, by the same rule by which the quantity of other taxed property is measured. As to all other property, the amount owned on a common date is the quantity to be taxed. It is that which is owned or possessed on April 1. It is true that the proposed act could be so construed as to provide for a uniform property tax. It provides that money received during the year as interest, etc., is taxable. Applying the common rule, it would be taxable only if possessed on the taxing date. Interest received during the year and still had in possession on April 1 would be taxed as of that date, and the tax would be laid as taxes upon other property are. It is assumed, however, that this is not

what the bill is intended to provide for. The purpose is assumed to be to tax all money that has been received as interest during the year, whether it is or is not owned by the recipient upon the taxing date. It may be that the inequality of the tax is more apparent when thus expressed, but this is the evident intent. In this respect the tax discriminates against those whom it is levied upon.

In another respect it discriminates against other taxed property. All other taxes are periodical. Once each year the property owner must contribute his just share. But this tax knows no recurrence and is not affected by the element of time. Whether levied annually, ten times a year, or once in ten years, the total amount paid would be the same. No matter how long the holder retains his dividends, he pays but one tax thereon. Of two dividends, one received March 31 and the other April 2, 1914, and both retained by the owner until April 1, 1915, one would then be taxed and the other would not. If dividends are taxed because they are property, no such disproportion can be sustained as between the dividends and other taxed property. Of course, if the tax is upon the event, the ground for distinction is manifest; but the proposition here set up is that the event merely places the dividends in the class of taxable property.

If the event can be used to fix the taxability of dividends as property in the way proposed, the road will be open for many kinds of discriminatory taxation of property. Considerations like these have heretofore uniformly led to the conclusion that income was not property within the purview of constitutional provisions relating to property taxes. By no process of mathematics can taxes upon incomes and taxes upon property be so correlated as to produce a proportional and equal tax upon each.

It is also suggested that the act of 1865, providing for a tax at a fixed rate upon certain incomes, was held to be not in violation of the state constitution. *Opinion of the Justices*, 53 N. H. 634. I do not so understand that opinion. It was not intended to pass upon the question of the applicability of the state constitution. It was remarked, in passing, that no violation of the state constitution was perceived; but that was not decided, because it appeared that the act plainly violated the constitution of the United States and was therefore void. This is made entirely clear at the close of the opinion, where it is stated in terms that the justices certify their opinion to be that, in so far as the act attempted to tax the income upon federal securities, it was void. They do not certify any opinion as to its validity under the state constitution; and it will not be

claimed by any one that there were not fatal objections. to the tax then proposed.

The statement that the incomes of certain ships have been taxable since 1881 is largely assumption. It may be that such incomes have been taxed since that time under an unconstitutional statute. Since the ships themselves have not been taxed, of course the ship-owners have not objected, for thereby they have escaped a large part of their just proportion of the public expense; and as no one else has taken the trouble to make complaint of the wrong done to him as a fellow-taxpayer, the practice has continued. It is hardly entitled to be considered as an authority upon the constitutional question of the taxability of such incomes.

It would seem that the decision of the court rendered the year before the ship income act was passed would be more persuasive. This is what was said by the court: "An equal tax of all property, accompanied by a so-called tax laid upon the income of farms and not upon the income of any other property, would not be accepted by the community as an equal or honest division of their common burden." *Robinson* v. *Dover*, 59 N. H. 521, 538. If a tax upon the farm and also upon its income would be unjust to the farmer, in that it caused him to pay more than his share of the common burden, equally unjust to him and equally disproportional is a tax upon only the income of money and bonds, while leaving the principal tax-free. Taxing his neighbor less is the same wrong as taxing him more. One is as unequal and as dishonest as the other.

It is now said that support for an income tax could be found in the history of taxation before 1789. Undoubtedly this is true. If the object of the interpreters of the constitution had been to permit all the inequality possible, and still keep within the letter of the compact while violating its spirit, it would have been easy to reach such a conclusion. But a different view of constitutional construction has heretofore prevailed in this state. "The doctrine of inequality in the division of public expense had gained ground in other jurisdictions, but not in New Hampshire." *Robinson* v. *Dover*, 59 N. H. 521, 531. As pointed out in *State* v. *Express Co.*, 60 N. H. 219, and again in the *Opinion of the Justices*, 76 N. H. 588, it was definitely settled, as early as 1833, that the constitution did not authorize the classification of the subjects of taxation. There could be but one class, except the specifically authorized tax upon polls. This has been the New Hampshire rule. "Admit for the purpose of argument all that may be said of the peculiarity of the New Hampshire doctrine of

constitutional equality. And admit that it is wrong and opposed to the common welfare, and that despotic powers with boundless partiality and discrimination, as practiced in various regions of the East, is more conducive to the interests of the community. . . . All this, taken for granted, would not affect this case. . . . Constitutional construction fixed by the reported decisions of sixty-seven years is not to be dealt with like unimportant forms of procedure, or English rules of law that are not adapted to the situation and circumstances of this country. On questions concerning the foundations of society where a system of government has lasted more than a century, the ancient landmarks cannot be removed by judicial decisions." *Doe*, C. J., unreported opinion in *State* v. *Griffin*.

The present proposition is to abandon this position, to hold that inequality is permitted and proportionality is not required, and, in effect, that all that has been said upon the subject, from the days of Chief Justice *Richardson* down to and including the opinion given to the last legislature, is wrong and is to be abandoned.

It has repeatedly been held that all efforts to tax credits, growing timber, and the like in any way but at their full and true value in money at the date when all other property is assessed are unconstitutional. It is immaterial whether the variation is sought by a change of rate, a reduction of value, or by levy upon only a part of the value. Nothing of the sort is permitted. If this were a property tax, the law here proposed would accomplish the same result by indirection.

It has been said that the equality of the constitution is a practical one. Judged by this standard, the proposed levy cannot be sustained as a property tax. One class of property owners pay a tax upon the full value of what they own, while another pay only on their income. This is an inequality not permitted. The only permissible inequality is that between taxed and untaxed property. Once property is taken into the class of taxed estate, the rule of equality and proportionality applies. The practical situation presented by the proposed law is this: The owner of a farm worth $1,000 pays (at a two per cent rate) a tax of $20, while the owner of a five per cent note for $1,000 pays a tax of $1. Upon whatever theory it is founded and by whatever argument it is justified, the practical, everyday result is that this inequality exists as between those two neighbors. Two property taxpayers of equal property, of equal ability to pay, and with equal duty to support the state, are taxed unequally by the ratio of 20 to 1.

This position as to the true nature and effect of the proposed tax finds support in the leading income tax case in this country. *Pollock* v. *Trust Co.*, 157 U. S. 429; *S. C.*, 158 U. S. 601. This case is cited in the majority opinion to the point that an income tax is a direct tax. But that is only a part of the decision. What is the income tax a direct levy upon? Not upon the income only, but upon the property out of which the income issues. "An annual tax upon the annual value or annual use of real estate appears to us the same in substance as an annual tax upon the real estate which would be paid out of the rent or income." *Ib.* Property without the beneficial use of it is but a fiction. A tax upon the profitableness of the use is a tax upon the corpus of the property. This is the vital point in that case. The tax upon rent is a direct tax upon the land out of which the rent issues. The tax upon the income of bonds is a direct tax upon the bonds themselves. The tax upon interest is a direct tax upon the money which earns the interest. Hence it follows, if this is a property tax, that under the proposed law a direct property tax of $20 would be levied upon the thousand-dollar farm and along with it a direct property tax of only $1 on a thousand-dollar note. Such a departure from established methods can be justified only upon clear proof that the people have assented to it.

Within a short time the people have passed upon the question. They refused to adopt the amendment, proposed by the last constitutional convention, which would permit a special rating of growing wood and timber and money at interest, and a tax upon certain incomes. If this be not an added reason why the constitutional rule heretofore followed in this state should be upheld, it certainly is not a mandate to abandon that rule.

The question is one of great importance, and I regret that the time for its consideration is necessarily so limited that an opinion upon it must be inadequately expressed. The ultimate results of the proposed construction cannot now be foreseen. But enough can be seen to demand an earnest protest from those who still believe that the principles of constitutional construction declared and followed for the last seventy-eight years ought not to be frittered away.

Plainly, we have come to the parting of the ways. It may be that in other jurisdictions classification or duplication of taxation is permitted; but it has not been so here. The effort heretofore has been to protect the individual against the encroachment of the government. The construction put upon the grant of the taxing power has

been deemed of the utmost importance in this regard; and the rule that it was not to be extended by implication has been scrupulously followed.    The rule of equality has been maintained against attacks from within and criticism from without.    It has been thoroughly understood by the people.    It cannot be assumed that a departure from the rule was intended, save in so far as the intention be plainly expressed.

As was said in *Thompson* v. *Kidder*, changes in our system of taxation can be made only in a convention of the people rearranging the fundamentals of their government.    Such a convention has been held since the amendment under consideration was adopted. Much of the time of that convention was taken up in the discussion of taxation problems which are already settled, if the proposed construction of the amendment of 1903 is sound.    It was assumed by that convention that such was not the fact; and an amendment proposing, among other things, to permit the levy of a tax upon the income of certain intangibles was submitted to the people, and was defeated.    Of course, this is not conclusive as to the true construction of the amendment of 1903; but it is a practical, contemporaneous construction by those who in a large part made up the convention by which the amendment of 1903 was proposed, and as such is entitled to serious consideration.    I cannot doubt that if the amendment of 1903 had been intended as a grant of power to tax incomes, or business, or privileges generally, it would have been so stated.

It is my opinion that the proposed act does not provide for laying a property tax.    It contemplates a tax upon certain incomes.    There is no grant of authority to lay such a tax, either in the original constitution, or in the amendment of 1903.    It is not an equal and proportional tax, as those terms are used in New Hampshire constitutional law.    No authority to levy a tax not complying with these restrictions has been granted, except as to polls and inheritances.    If the proposed tax could be called a property tax, it would not be a proportional and reasonable one within the meaning of our constitution; and power to enact it into law has not been conferred upon the legislature.

One other matter seems fairly included in your inquiry.    You ask whether any constitutional provision would be violated by any provision of the proposed act.    Section 2 provides for repealing the law taxing moneyed capital in the hands of individuals.    If this is done, then the present tax on stock in national banks will be made

inoperative; and under the constitution and laws of the United States, no tax can thereafter be imposed on such stock, until a like tax is laid upon moneyed capital in the hands of individuals. National banks are instrumentalities of the national government, and are therefore not subject to state taxation, except as the general government permits. The permission given is as follows:.

"The legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the share of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere." U. S. Rev. Stat. (1878), s. 5219.

"The term 'moneyed capital' as used in Rev. Stat., s. 5219, respecting state taxation of shares in national banks, embraces capital employed in national banks and capital employed by individuals when the object of their business is the making of profit by the use of their moneyed capital as money." *Palmer* v. *McMahon*, 133 U. S. 600.

It is unquestionably the law that stock in national banks cannot be taxed at a greater rate than is levied upon money at interest which is owned by individual citizens.

One other feature of the bill ought to be examined if the majority opinion is to be followed. The proposed act would tax the dividends paid upon deposits in savings banks out of the state, but not those paid upon deposits in savings banks in the state. If the law were otherwise sustainable, this proposition ought to receive careful consideration.

ROBERT J. PEASLEE.

March 1, 1915.