Argued 11 July, decided 7 August, 1905.

## LAKE COUNTY *v.* SCHRODER.

81 Pac. 942.

TAXATION — CONSTITUTIONAL REQUIREMENT OF UNIFORMITY — VALIDITY OF MIGRATORY STOCK LAW OF 1905.

A statute such as Laws 1905, pp. 273, 277, providing for the assessment and taxation of certain classes of personal property at the same rate of levy as other property, unless the owner is without sufficient real estate to insure payment of the tax, in which case the assessment shall be made at the rate of the preceding year, and which fails to provide for a subsequent adjustment or equalization of the taxes collected from the owner in accordance with the rate of levy for the preceding year, in case such rate differs from the rate for the current year in which the taxes are collected, is repugnant to Const. Or. Art. I, § 32, requiring taxes to be equal and uniform, and Article IX, § 1, requiring the legislature to provide for a uniform and equal rate of assessment and taxation.

From Lake : HENRY L. BENSON, Judge.

Action by Lake County against A. B. Schroder. From a judgment of dismissal, plaintiff appeals. AFFIRMED.

For appellant there was a brief over the name of *Andrew M. Crawford*, Attorney General, and *W. J. Moore*, District Attorney, with an oral argument by *Mr. Crawford*.

For respondent there was a brief over the names of *Charles A. Cogswell* and *William Addison Wilshire*, with an oral argument by *Mr. Cogswell*.

MR. CHIEF JUSTICE WOLVERTON delivered the opinion.

This is an action by the county to recover against the owner upon an assessment of his live stock, which he was about to remove into another county, according to the rate of levy of the previous year, in pursuance of an act of the legislative assembly, entitled "An act to provide for the

assessment and taxation of live stock," etc.; it being alleged that the defendant has no real property with which to secure the payment of such tax. A demurrer being sustained to the complaint, judgment was rendered dismissing the action, from which plaintiff appeals.

Plaintiff's cause of action depends entirely upon the proper construction of the act under which it is instituted : Laws 1905, p. 273, 277. In epitome, the act provides :

Section 1. That all live stock kept, driven, or pastured in more than one county in the State during the year shall be subject to taxation in each of the counties in proportion to the time it is permitted to range therein, respectively.

Section 2. That all live stock shall be assessed for taxation in the county in which it is found at the time fixed by law for assessment of all properties in the State, such county to be known as its " home county "; that at the time of such assessment the owner shall make and deliver to the assessor a written statement under oath, showing by appropriate description the different kinds of such live stock within the county belonging to him,.and giving the full time during the current year that it has been or will remain in such county; that "such live stock and the owner thereof shall be liable to said county for the taxes thereon at the rate of levy for all state, county, and other purposes, as other property is liable"; and that the owner thereof shall, unless sufficient real estate ample to secure the same is liable therefor, pay to the assessor, at the time of such levy or assessment, the whole amount of said taxes for the full year at the rate of the last preceding levy, and take his receipt therefor.

Section 3. That whenever such live stock is removed, kept, or pastured in another county, other than the home county, the owner thereof shall, within 15 days from the time of entering such county, notify the stock inspector thereof that he has entered the county with live stock, giving the date, description, etc.; that he shall also make and deliver to such inspector a written statement under oath, similar in all respects, so far as practicable, to the statement required in the home county, showing the full length

of time during the current year that such stock has been and will remain in such county, and that the taxes thereon for such year have been fully paid in the home county, producing at the same time for inspection the receipt for such taxes, or, if their payment has been secured, the certificate showing the same, and such live stock and the owner thereof shall be liable to said county for the particular portion of the taxes thereon for the full length of time that the stock has been or will remain within the said county during the year, according to the last preceding rate of levy in said county for all county, state, and other purposes, as other property in said county is liable; that said owner shall, before any of such live stock shall leave the county, pay said taxes to the stock inspector of said county, or shall secure the payment of the same to the satisfaction of the inspector, and take his receipt or certificate therefor.

Section 4. That as soon as any live stock has been returned to its home county, or, if not so returned, then before the expiration of the year, the owner shall present the receipt or receipts secured by him, showing the parts of the year for which taxes have been paid in other counties under and in pursuance of the provisions of this act, and such owner shall be entitled to receive from the treasury of the home county out of the migratory stock fund such part of the amount of taxes paid as the total periods of time for which taxes have been paid in other counties within the State, as shown by the receipts therefor, is to the whole year.

Section 5. That all taxes that shall become due to any county under these provisions shall be a personal debt and demand against the owner to whom the property was assessed, and may be enforced by any proper action in the name of the county in any court of competent jurisdiction, and secured by attachment or other provisional remedy; and said taxes shall be a first lien upon the live stock, wherever found in the State, and a lien upon all real estate belonging to any owner of said live stock situated within the county to which said taxes are due and payable, and said lien shall only be discharged by the actual payment of the taxes.

There is an obscurity attending this statute, and it is somewhat difficult to determine just what it means. In section 2 (page 274) it prescribes, as will be noted, that such live stock and the owner thereof "shall be liable to said [home] county for the taxes thereon at the rate of levy for all state, county and other purposes as other property is subject." This seemingly refers to the rate of levy for the same or current year that is applied to other property, but the succeeding clause is not in harmony with such rendering. It requires the owner, unless sufficient real estate ample to secure the same is liable therefor, to pay the assessor at the time of such assessment the whole amount of said taxes for the full year at the rate of the last preceding levy. If, therefore, the owner has no real property, he must pay the taxes at the preceding year's rate of levy. This latter idea is again embodied in the third section of the act, except that the payment is required to be made according to the last preceding rate of levy in the county other than the home county. So, in section 5, all taxes that shall become due to the county under the preceding provisions of the act are made a personal debt and demand against the owner to whom the property is first assessed, which the county is entitled to enforce by action. This has relation, unmistakably, to the demand created at once when the assessment is concluded by computation at the last preceding rate of levy, because the levy for the current year would not be made until a very much later date. So that the rate of levy according to which payment shall be made is by manifest intendment other than that for the current year by which other property is liable.

While, then, we have the seeming condition, under the act, that the owner is liable for the taxes on his live stock at the rate of levy applicable to other property, yet, if he has no realty; he is forced to pay according to the preceding year's levy, and there is no method devised or pro-

vided by which he may have the matter subsequently adjusted or equalized, so it must result that finally he will either pay more or less than at the rate of levy for the current year, according as that of the preceding year is more or less. If it was the intendment of the legislature that the owner should only pay as the act seemingly has made him liable, he would be finally mulcted at a greater rate if the rate of levy for the preceding year was higher than for the current year. Not having provided otherwise, we must conclude that, at least where the owner has no real estate within the county by which to secure the tax, it was intended that he should eventually be liable for the rate of levy for the preceding year, which may be more or may be less than for the current year. This is a fatal defect in the law. Whether an oversight or not, we cannot tell. It puts the owner of live stock, who must pay his taxes at once, at a disadvantage, as compared with the owner of other stock not migratory, because he must pay at a different rate of levy. Of course, the disadvantage to him arises only when he has to pay at a higher rate of levy. Of the lower rate he could not complain. There exists here an inequality, and it is left for us to inquire whether it is such as is inhibited by the constitution.

The provisions of the constitution that have application, if at all, in the premises, are the latter clause of article I, section 32: "All taxation shall be equal and uniform," and the first clause of article IX, section 1: "The legislative assembly shall provide by law for uniform and equal rate of assessment and taxation." These clauses are analyzed and discussed with great perspicuity in *Crawford* v. *Linn County*, 11 Or. 482 (5 Pac. 738), in a very able and learned opinion by Mr. Chief Justice WALDO, and their purposes are made perfectly plain. Speaking of the latter clause, he says: "The word 'rate' is used in a somewhat different sense when applied to the assessment from that when ap-

plied to taxation. 'The term "rate" may apply either to the percentage of taxation, or to the valuation of property': *State* v. *Utter*, 34 N. J. Law, 489. It is applied in this clause in each sense — in the former sense to the taxation, and in the latter to the assessment. It is evident that equality in the rate of assessment means proportional valuation — relative, not absolute, equality; while equality in the rate of taxation means that the percentage shall be the same, or absolutely equal. The result is relative equality of taxation. * * If the rate of assessment and taxation be equal, it is conceived it will be uniform ; that is, that no meaning can be attached to the word 'uniform' which is not conveyed by the word 'equal.' If the rate is everywhere equal, or the same, it will be uniform, necessarily. If the rate is varied, so that property of different kinds or in different localities is valued or taxed at different rates, the rate will be unequal, and so not uniform, and so far as it is equal it will also be uniform." It is perfectly manifest that the rate of levy referred to in the act under consideration signifies the percentage of levy or taxation upon the property of the individual. That percentage is such as is fixed by law for state purposes, added to the county levy, made in pursuance of Section 3085, B. & C. Comp., and the aggregate denotes the rate of levy or the rate or percentage of taxation that the taxpayer must pay of the public revenues upon his property. This is the same that the constitution guarantees shall be uniform and equal, and the same that Chief Justice WALDO so aptly determines in meaning and application.

The term "rate," as applied to the word "taxation," means percentage of taxation, which is equivalent to the percentage or rate of levy, and is required to be absolutely equal, not relatively equal and uniform, which, when connected up with relative equality in the assessment, results in relative equality in taxation. Now, we must take it for

granted that the rate of levy is not the same for each year. It may be less for one year and greater for another, and in that respect it is neither equal nor uniform, nor was it ever intended to be so. So that the statute under consideration in effect provides upon its face for the demand and payment of a rate of taxation that is neither equal nor uniform with the ordinary levy of taxation, without an opportunity of having the same equalized in any manner; and hence the statute is for this single cause inimical to the constitutional guaranty that a uniform and equal rate of assessment and taxation shall be provided for and that all taxation shall be equal and uniform.

*Rode* v. *Siebe*, 119 Cal. 518 (51 Pac. 869, 39 L. R. A. 342), is cited and relied upon by counsel for the appellant as authority for their position that the act in question is valid; but the act there considered contains the very provision that is lacking here, and was announced as one of the distinguishing reasons why the act was upheld by the majority of the court, the court saying: "Provision is made for refunding to the taxpayer any excess in the collection and for the payment by him of any deficiency." Were it not for this provision, the act would doubtless not have been upheld.

Another objection is raised respecting the constitutionality of the statute — that is, that no notice or adequate hearing is provided for the owner of such live stock as is within the purview of the act, before he is precluded by the assessment, and that the statute is void for that reason; but, as the case has been disposed of on the first objection, it is unnecessary that we decide this latter question now.

The judgment of the circuit court should be affirmed, and it is so ordered.                                    Affirmed.