Argued May 27, reversed September 16, rehearing denied October 21, 1924.

# STANDARD LBR. CO. *v.* WALTER M. PIERCE ET AL.

### (228 Pac. 812.)

**Taxation—Collection of Illegal Tax may be Enjoined at Suit of Person Threatened Therewith.**

1. Equity may enjoin collection of an illegal tax at the suit of the person threatened with such collection.

**Constitutional Law—Taxation—Income Tax Act Held not to Deny Equal Protection of Laws.**

2. Income Tax Act providing rates of taxation which increase progressively as the amount of taxable income increases is not invalid as denying equal protection of the laws.

**Constitutional Law—Taxation—Effect of Fourteenth Amendment on Taxing Power of State Stated.**

3. The only limitation imposed on taxing power of state by the Fourteenth Amendment of federal Constitution is that all taxation shall be uniform on the same class of subjects.

**Taxation—Scope of Requirement of State Constitution as to Uniformity of Taxation Stated.**

4. Constitution, Article I, Section 32, and Article IX, Section 1, as amended (see Laws 1919, pp. 5, 6), requiring uniformity of taxation upon same class of subjects and uniform rules of assessment

———

1. Right of individual to enjoin collection of illegal tax, notes, 3 Ann. Cas. 1014; Ann. Cas. 1917E, 97.

See 12 C. J., §§ 881, 884 (1926 Anno.), 877; 36 Cyc., pp. 976, 982; 37 Cyc., pp. 729, 747 (1926 Anno.), 748, 766, 810, 1259.

and taxation does not restrain taxing power of legislature beyond restrictions of the Fourteenth Amendment to federal Constitution, except that among members or objects included in class selected by legislature, inherent uniformity, as well as territorial uniformity, is required.

**Taxation—Subjects of Class Selected for Taxation not Required to be Precisely Alike in All Respects.**

5.   Constitution, Article I, Section 32, as amended (see Laws 1919, p. 5), as to uniformity of taxation, does not require that subjects of class selected for taxation shall be precisely alike in all respects, but rather that they must be alike in the essential particulars which caused them to be included in one classification.

**Taxation—Incomes from Ownership or Use of Property, and Those from Salaries, Wages, etc., may be Grouped Together for Taxation Purposes.**

6.   Under Constitution, Article I, Section 32, as amended (see Laws 1919, p. 5), incomes whether growing out of ownership or use of property, or derived from salaries, wages or compensation for personal service, may be grouped together for purpose of taxation.

**Taxation—Income Tax Act Classifying Incomes and Taxing Them at Rates Increasing Progressively With Amount of Income Valid.**

7.   Under provisions of state Constitution relating to taxation, legislature has power to classify incomes and to subject recipients of such incomes to tax thereon at rates which increase progressively as amount of taxable income increases.

**Taxation—Receipt of Corporate Dividends by Nonresident in State of Domicile Held not "Doing Business" Within State Within Income Tax Law.**

8.   Receipt of corporate dividends by nonresident in state of his domicile does not constitute "doing business," within meaning of Income Tax Act, Section 3, imposing such tax upon nonresident individual doing business in state.

**Constitutional Law—Taxation—Income Tax Act Held to Deny Equal Protection of Law to Corporation Having Nonresident Stockholders.**

9.   Income Tax Act, Section 3, permitting corporation doing business in state to deduct from its net income dividends paid residents of state, but not permitting such deduction of dividends paid nonresidents, denies equal protection of the law to corporation having all or part nonresident stockholders, and is void.

**Constitutional Law—Taxation—Income Tax Act not Permitting Deduction of Dividends Paid Nonresident Stockholders Held not Necessarily Denial of Equal Protection of Laws to Them.**

10.   Income Tax Act, Section 3, providing that corporation may deduct from its income dividends paid residents of state, but not dividends paid nonresidents, does not necessarily discriminate against nonresident stockholders since corporation affected thereby is legal entity distinct from stockholders.

**Constitutional Law—Corporation is a "Person" Entitled to Equal Protection of Law.**

11. A corporation is a "person" within the Fourteenth Amendment to the federal Constitution, and entitled to equal protection of the law.

**Taxation—Circumstances Held not to Constitute Basis for Classifying Corporations Separately for State Taxation Purposes.**

12. Corporations cannot be classed separately for taxation because one or more of their respective stockholders happen to be nonresidents at the tax levying date.

**Statutes—Rule as to Validity of Statute Partly Constitutional and Partly Unconstitutional Stated.**

13. If statute is partly constitutional and partly unconstitutional, and invalid part is severable, valid part may stand while invalid part is rejected.

**Statutes—On Showing by Statute That Legislature Intended Valid Portions to Stand, Invalid Portions will be Disregarded.**

14. If it is clear from statute that legislature intended to enact valid portions, irrespective of other invalid portions, invalid provisions will be disregarded and statute read as if latter provisions were not there.

**Statutes—Invalidity of Part of Income Tax Act Held not to Destroy Whole Act.**

15. That proviso to income tax law was void, because discriminating against corporations having nonresident stockholders, *held* not to invalidate remainder of statute, which in no part was dependent on such proviso, and Section 40 providing that invalidity of any portion of act should not impair remainder.

From Marion: GEORGE G. BINGHAM and PERCY R. KELLY, Judges.

In Banc.

REVERSED. REHEARING DENIED.

For appellants there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, *Mr. L. A. Liljeqvist,* Assistant Attorney General, and *Mr. Miles H. McKey,* Assistant Attorney General, with oral arguments by *Mr. Liljeqvist* and *Mr. McKey.*

For respondent there was a brief over the names of *Messrs. Dey, Hampson & Nelson, Mr. George L. Buland* and *Mr. George S. Shepherd,* with oral arguments by *Mr. Alfred A. Hampson* and *Mr. Buland.*

McCOURT, J.—The plaintiff, an Oregon corporation, instituted this suit against the members of the State Tax Commission and the Attorney General, to secure a permanent injunction against those officers, restraining them from proceeding under Chapter 279, Laws of 1923, known as the "Income Tax Act," to compel plaintiff to file a return thereunder, or to pay any or all of the taxes imposed thereby, and generally to restrain the defendants from enforcing the act mentioned.

By its complaint, plaintiff charges that the Income Tax Act violates both the state and federal Constitutions. The facts alleged in the complaint are directed chiefly at two provisions of the act, both of which it is claimed offend against constitutional inhibitions. In its brief upon appeal plaintiff states its contentions in respect to the provisions mentioned, substantially as follows: (1) that the system of graduated rates adopted by the act which imposes upon the taxpayer a rate of taxation that progresses and becomes larger with the increase in the amount of his taxable income, is an arbitrary and capricious method of classification, both with respect to corporations and individuals, in violation of the Fourteenth Amendment to the federal Constitution, and is violative of the requirements of the state Constitution that all taxation shall be uniform on the same class of subjects. (2) That the proviso attached to Section 3 of Article II of the act, hereinafter set out, which permits a corporation to deduct from its net income the amount of dividends declared and paid to residents of the State of Oregon (a right which is not accorded with respect to corporate dividends paid to nonresidents), is discriminatory in an arbitrary and capricious manner

between corporations having nonresident stockholders and corporations not having nonresident stockholders, and also discriminates against nonresident stockholders as individuals in favor of resident stockholders as individuals in that the former are subject to double base rates of taxation and higher graduated rates of taxation with respect to said dividends than the latter, thus denying to corporations such as the plaintiff the equal protection of the laws guaranteed by the Fourteenth Amendment to the federal Constitution, and denying to nonresident stockholders of such a corporation the privileges and immunities accorded to the citizens of Oregon, in violation of Section 2 of Article IV of the federal Constitution.

Defendants interposed a demurrer to plaintiff's complaint, based upon the grounds, among others, that the court was without jurisdiction to entertain the cause, and that the complaint did not state facts sufficient to constitute a cause of suit against the defendants, or any of them, which demurrer was sustained by the Circuit Court. Thereupon the defendants, with permission of the court, filed an answer admitting the allegations of the complaint that are material to the objections raised by plaintiff to the constitutional validity of the Income Tax Act. Defendants admitted, among other things, that they purposed and threatened to collect a tax from all persons liable under said Income Tax Act, in accordance with the statute and the regulations adopted, pursuant to its authority; also that they contemplated and threatened, on the failure or refusal of any person to comply with all the requirements of the act, to use all of the remedies provided in said act for the collection of the tax or taxes

imposed thereby. The cause was submitted to the Circuit Court upon the pleadings, supplemented by the following stipulation:

"It is hereby stipulated and agreed, between the plaintiff and the defendants, as follows:

"(1) The plaintiff conducts no business within the State of Oregon and maintains no general business headquarters therein, except that the office of its secretary is located in said state, and at the office of the secretary from time to time are held formal meetings of its board of directors. All of its commercial transactions are carried on without the State of Oregon, including all collections of moneys due it and all payment of moneys due from it.

"(2) The entire taxable income of the plaintiff during the year 1923 accrued from investments made without, or resulted from commercial transactions entered into and consummated without the state of Oregon.

"(3) During the year 1923, the plaintiff declared and paid *pro rata* among its stockholders, some of whom were and are residents and citizens of the State of Oregon, and others of whom were and are nonresidents of the State of Oregon and citizens of states of the United States other than the State of Oregon, dividends in the aggregate amount of $14,500.00

"(4) During the year 1923, no part of the income of the plaintiff was derived from property located in or business conducted within the State of Oregon. Its entire income during said period of time was derived from business conducted without the State of Oregon. A portion of said income was derived from the rentals of tangible personal and real property situated in states other than the State of Oregon.

"(6) It is further stipulated that all courts entertaining jurisdiction of this cause may take judicial notice of the Income Tax Regulations as the same have been printed by the State Printing Department of the State of Oregon in a certain pamphlet of 128

pages, containing 220 articles, which regulations were affirmed by the State Tax Commission of Oregon under date of January 24, 1924.''

The Circuit Court held that the proviso attached to Section 3 of Article II of the act discriminated against corporations having nonresident stockholders in violation of the Constitution of the United States. A decree in conformity to the prayer of its complaint was awarded to plaintiff. Defendants appeal, and in this court, contest all of the contentions urged by plaintiff in the Circuit Court.

1. Defendants assume that the jurisdiction of equity to entertain this suit is questionable, but they do not argue the point in their brief. Controlling decisions afford frequent examples of the exercise of equitable jurisdiction to prevent the collection of an unauthorized tax, at the suit of a taxpayer threatened with the collection of the tax. The number of such decisions is very large. The following citations will illustrate the principle upon which the jurisdiction of equity is invoked in such cases: *Kellaher* v. *City of Portland,* 57 Or. 575, 580 (110 Pac. 492; 112 Pac. 1076), and earlier Oregon cases cited therein; *Shaffer* v. *Carter,* 252 U. S. 37 (64 L. Ed. 445, 40 Sup. Ct. Rep. 221); *Greene* v. *Louisville & I. R. Co.,* 244 U. S. 499 (Ann. Cas. 1917E 88, 61 L. Ed. 1281, 37 Sup. Ct. Rep. 673); *Travis* v. *Yale & Towne Mfg. Co.,* 252 U. S. 60 (64 L. Ed. 461, 40 Sup. Ct. Rep. 228). Those cases abundantly establish the right of plaintiff to obtain a consideration of its alleged grievances by a court of equity.

We will first consider the attack made by plaintiff upon the section of the Income Tax Act, wherein incomes taxable under the act, are classified, and the recipients of such incomes subjected to a tax thereon,

at rates which increase progressively as the amount of taxable incomes increases.

As above stated, plaintiff asserts that the above-mentioned feature of the Income Tax Act constitutes an arbitrary and capricious method of classification, in violation of the Fourteenth Amendment to the Constitution of the United States, and also violates the requirements of the state Constitution (Art. IX, § 1) declaring that all taxation shall be uniform upon the same class of subjects.

The Oregon Income Tax Act is patterned after the federal act bearing the same designation, and like its model contains comprehensive directions for computing, levying and collecting the taxes imposed by the act, and to that end provides for the imposition of heavy penalties, both civil and criminal, upon any taxpayer who fails to file a return of income or pay a tax at the time required by or under the provisions of the act. The Income Tax Act contains, among others the following provisions:

"Article I.

"Section 2.  *Definitions.*—For the purposes of this act and unless otherwise required by the context; * *

"12. The words 'resident taxpayer' mean a taxpayer residing in the State of Oregon, or, if incorporated, organized under the laws of the state. * * The words 'nonresident taxpayer' mean a taxpayer other than a resident taxpayer as above defined. * *

"Article II.

"Section 3. *Individuals.*—1. A tax is hereby imposed upon every resident or nonresident individual and corporation doing business in the State of Oregon, which tax shall be levied, collected and paid annually, with respect to the taxpayer's entire net income as herein defined, computed at the following rates, after deducting the exemptions provided in this act:

112 Or.—21

"(a) On the first $1,000 of taxable income or any part thereof, 1 per cent thereof;

"(b) On the second $1,000 or any part thereof, 1¼ per cent;

"(c) On the third $1,000 or any part thereof, 1½ per cent;

"(d) On the fourth $1,000 or any part thereof, 1¾ per cent;

"(e) On the fifth $1,000 or any part thereof, 2 per cent;

"(f) On the sixth $1,000 or any part thereof, 2½ per cent;

"(g) On the seventh $1,000 or any part thereof, 3 per cent;

"(h) On the eighth $1,000 or any part thereof, 3½ per cent;

"(i) On the ninth $1,000 or any part thereof, 4 per cent;

"(j) On the tenth $1,000 or any part thereof, 4½ per cent;

"(k) On the eleventh $1,000 or any part thereof, 5 per cent;

"(l) On the twelfth $1,000 or any part thereof, 5½ per cent;

"(m) On any sum of taxable income in excess of $12,000, 6 per cent.

"Provided, however, that any dividend declared and paid by a resident corporation to residents of the State of Oregon, from its net income for any income year, or on or before thirty days after the expiration thereof, shall be deducted from the net income of such corporation before the imposition of the tax thereon; and provided further, that any dividends declared and paid by a nonresident corporation to residents of this state from its net income for any income year, or on or before thirty days after the expiration thereof, shall be deducted from the net income of such nonresident corporation before the imposition of the tax thereon. * *

"Article III.

" * * Section 5. *Net Income of Individuals and Corporations Defined.*—The words 'net income,' with reference to individuals and corporations, mean the gross income of the taxpayer less the deductions allowed by this act.

"Section 6. *Gross Income of Individuals and Corporations Defined.*—1. The words 'gross income' include gains, profits and income derived from salaries, wages or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, business, commerce or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends or the transaction of any business carried on for gain or profit, or gains or profits, and income derived from any source whatever. The amount of all such items shall be included in the gross income of the income year in which received by the taxpayer, unless under the methods of accounting permitted under this act, any such amounts are to be properly accounted for as of a different period. * *

"Section 7, * *

"5. The amount of the net income returned by a nonresident individual or corporation shall be that proportion of the taxpayer's total net income which the taxpayer's gross business done in the State of Oregon bears to the total business done by the taxpayer."

The deductions from gross income, which the act allows, for the purpose of ascertaining the net income of a taxpayer are set forth in detail in the act: Section 11. Items not deductible for that purpose are also specified therein: Section 12. The statute allows and directs that there be deducted from net income, a personal exemption of $1,000 to an individual, if single, and if the head of a family

or married and living with husband or wife, $2,000 and in addition thereto $400 for each dependent; in the case of a resident or nonresident corporation, a like exemption of $2,000 is permitted: Section 13.

Section 14 of Article IV of the Income Tax Act provides exemptions from taxation to various individuals and corporations named therein, all other individuals and corporations within the class defined by Section 3 of Article II of the Income Tax Act being subject to the payment of income tax. Exemptions from the payment of the income tax imposed by the Income Tax Act are granted to banks, savings banks, institutions for savings, insurance companies, trust companies, corporations wholly engaged in the purchase and sale of and holding title to real estate as principals, and corporations whose sole business consists of holding the stocks of other corporations for the purpose of controlling the management and affairs of such corporations; exemption from payment of the tax is also granted to all corporations upon the gross earnings of which a tax is or may hereafter be levied or placed, other than for a specific purpose, and to insurance companies upon which a tax on premiums is or may hereafter be levied or placed.

Broadly speaking, the act deals with incomes from whatever source derived, received by residents of the state and by nonresident individuals and corporations doing business in the state, and separates such incomes from other taxable subjects, and for the purpose of taxation, places them in a distinct class.

The action of the legislature in the respect mentioned is perhaps more accurately designated as a selection of a source (not theretofore resorted to in this state), from which public revenue may be de-

rived, than the classification of a subject for taxation. It constituted the first step in developing and putting into statutory form the scheme of taxation provided by the act, and did not in the true sense involve the power of the legislature to classify in furtherance of its powers of taxation.

2. The exercise of the power to classify, which the legislature, by the enactment of the Income Tax Act, assumed it possessed, lies in the progressive feature of the act. It will be observed that the act separates incomes into thirteen classes, each based upon the amount of taxable income received by the taxpayer; the first class includes taxable income of $1,000; an additional class is created for each increase of $1,000 or part thereof in the amount of taxable income up to $12,000; all taxable incomes in excess of $12,000 are embraced in one division or class.

The rates of taxation imposed by the act are graduated so that they increase progressively from one per cent upon the first $1,000 of taxable income, until the rate upon the amount of taxable income in excess of $12,000 is six per cent thereof. It will be noticed that all taxpayers in the same class pay the same rate, and that in so far as taxable incomes are equal each taxpayer is required to pay the same rate irrespective of the class to which he belongs; the increased rate that one taxpayer is compelled to pay as compared with a taxpayer who enjoys a lower rate applies only to the amount which the taxable income of the taxpayer in the one class exceeds that of the taxpayer in the other class.

The clause of the Fourteenth Amendment to the federal Constitution, which plaintiff contends is violated by the foregoing classification, reads as follows:

"No State shall make or enforce any law which shall * * * deny to any person within its jurisdiction, the equal protection of the laws."

The limitations upon the taxing power of the states imposed by the above constitutional provision has been considered by the Supreme Court of the United States in a large number of cases, among which are the following: *Michigan C. R. Co.* v. *Powers,* 201 U. S. 245 (50 L. Ed. 744, 26 Sup. Ct. Rep. 459); *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232 (33 L. Ed. 892, 10 Sup. Ct. Rep. 533); *Home Ins. Co.* v. *New York,* 134 U. S. 594 (33 L. Ed. 1025, 10 Sup. Ct. Rep. 593); *Pacific Express Co.* v. *Seibert,* 142 U. S. 339 (35 L. Ed. 1035, 12 Sup. Ct. Rep. 250); *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283 (42 L. Ed. 1037, 18 Sup. Ct. Rep. 594); *Southern Ry. Co.* v. *Greene,* 216 U. S. 400 (17 Ann. Cas. 1247, 54 L. Ed. 536, 30 Sup. Ct. Rep. 287); *Keeney* v. *New York,* 222 U. S. 525 (56 L. Ed. 299, 32 Sup. Ct. Rep. 105, 38 L. R. A. (N. S.) 1139); *Citizens' Telephone Co.* v. *Fuller,* 229 U. S. 322 (57 L. Ed. 1206, 33 Sup. Ct. Rep. 833); *St. Louis S. W. R. Co.* v. *Arkansas,* 235 U. S. 350 (59 L. Ed. 265, 35 Sup. Ct. Rep. 99, see, also, Rose's U. S. Notes); *Northwestern Mutual Life Ins. Co.* v. *Wisconsin,* 247 U. S. 132 (62 L. Ed. 1025, 38 Sup. Ct. Rep. 444); *Ft. Smith Lbr. Co.* v. *Arkansas,* 251 U. S. 532 (64 L. Ed. 396, 40 Sup. Ct. Rep. 304); *Shaffer* v. *Carter,* 252 U. S. 37 (64 L. Ed. 445, 40 Sup. Ct. Rep. 221); *Royster-Guano Co.* v. *Virginia,* 253 U. S. 412 (64 L. Ed. 989, 40 Sup. Ct. Rep. 560); *Dame* v. *Jackson,* 256 U. S. 589 (65 L. Ed. 1107, 41 Sup. Ct. Rep. 566).

Those decisions point out that unless restrained by provisions of the federal Constitution, the power of the states as to the mode, form and extent of

taxation is unlimited when the subjects to which it applies are within their jurisdiction, and that in the absence of limitations upon the taxing power prescribed by the organic law of the state, and where conflict with federal power is not involved, the interest, wisdom and justice of the representative body and its relations with its constituents furnish the only security against unjust and excessive taxation, as well as against unwise legislation generally. And such was the declaration of this court in *Crawford v. Linn County,* 11 Or. 482 (5 Pac. 738).

The decisions of the Supreme Court of the United States above cited, and many others, further hold that the provision in the Fourteenth Amendment, that no state shall deny to any person within its jurisdiction, equal protection of the laws, was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways, nor to compel a state to adopt an iron rule of equal taxation, to prevent the classification of property for purposes of taxation, or the imposition of different rates upon different classes. The court has declared repeatedly that the amendment does not prevent the classification of subjects for taxation; that in taxation there is a broader power of classification than in some other exercises of legislation; and that the requirements of the equality clause of the Fourteenth Amendment are met if the state statute operates ''equally and uniformly upon all persons in similar circumstances'' and does not create ''clear and hostile discriminations between particular persons and classes.''

Dealing especially with the power of classification possessed by the states in respect to taxation, those decisions hold that while reasonable classification is

permitted, without doing violence to the equal protection of the laws, such classification must rest upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced shall be treated alike; classification cannot be arbitrarily made without any substantial basis, and must not be altogether illusory. "Arbitrary selection," the court has said, "cannot be justified by calling it classification." The decisions emphasize the principle that the latitude of discretion is notably wide in the classification of subjects for purposes of taxation, and declare that the state has the right to select the differences upon which the classification shall be based and that such differences need not be clear and conspicuous. Any classification they say is permissible which has a reasonable relation to some permitted end of governmental action, and it is not necessary that the basis of the classification must be deducible from the nature of the things classified; it is enough if the classification is reasonably founded within the purpose and policy of taxation, and if some real and substantial distinction is present a classification based thereon is reasonable if made with respect to the kind of property or the amount or value of the property or the character of the taxpayers subjected to the tax.

In *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283 (42 L. Ed. 1037, 18 Sup. Ct. Rep. 594, see, also, Rose's U. S. Notes), the court upheld the constitutionality of a statute of the State of Illinois (Laws 1895, p. 301), containing a classification, an important element of which was like the feature of the Oregon Income Tax Act that plaintiff claims is invalid; that statute imposed a graduated tax upon legacies and inheritances, and divided the beneficiaries

into three classes; the first and second being composed of lineal and collateral relations of the decedent, and the third being composed of more distant relatives and strangers. On the first class a tax of one per cent was imposed on all sums in excess of $2,000; on the second, two per cent on all sums in excess of $2,000; and on the third, three per cent on all sums over $4,000 and less than $10,000, increasing one per cent on each succeeding $10,000 up to $40,000, above which amount it was six per cent. The act was attacked on the ground that it denied to the plaintiff the equal protection of the laws. In discussing the question the court said:

"The clause of the 14th Amendment especially evoked is that which prohibits a state denying to any citizen the equal protection of the laws. What satisfied this equality has not been and probably never can be precisely defined. Generally it has been said that it 'only requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances.' *Kentucky Railroad Tax Cases*, 115 U. S. 312 (29 L. Ed. 414, 6 Sup. Ct. Rep. 57, see, also, Rose's U. S. Notes). It does not prohibit legislation which is limited, either in the objects to which it is directed or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed. *Hayes* v. *Missouri*, 120 U. S. 68 (30 L. Ed. 578, 7 Sup. Ct. Rep. 350, see, also, Rose's U. S. Notes). Similar citations could be multiplied. But what is the test of likeness and unlikeness, of circumstances and conditions These expressions have almost the generality of the principle they are used to expound, and yet they are definite steps to precision and usefulness of definition, when connected with the facts of the

cases in which they are employed. With these for illustration it may be safely said that the rule prescribes no rigid equality and permits to the discretion and wisdom of the state a wide latitude as far as interference by this court is concerned. Nor with the impolicy of a law has it concern. Mr. Justice FIELD said in *Mobile County* v. *Kimball*, 102 U. S. 704 (26 L. Ed. 242, see, also, Rose's U. S. Notes), that this court is not a harbor in which can be found a refuge from ill advised, unequal, and oppressive state legislation. And he observed in another case: 'It is hardly necessary to say that hardship, impolicy, or injustice of state laws is not necessarily an objection to their constitutional validity.'

"The rule, therefore, is not a substitute for municipal law; it only prescribes that that law have the attribute of equality of operation, and equality of operation does not mean indiscriminate operation on persons merely as such, but on persons according to their relation."

Applying the foregoing rules to the statute it was considering, the court said:

"There are three main classes in the Illinois statute, the first and second being based, respectively, on lineal and collateral relationship to the testator or intestate, and the third being composed of strangers to his blood and distant relatives. The latter is again divided into four subclasses dependent upon the amount of the estate received. The first two classes, therefore, depend on substantial differences, differences which may distinguish them from each other and them or either of them from the other class—differences, therefore, which 'bear a just and proper relation to the attempted classification'—the rule expressed in the *Gulf, Colorado, & Santa Fe R. Co.* v. *Ellis, supra.* And if the constituents of each class are affected alike, the rule of equality prescribed by the cases is satisfied. In other words, the law operates 'equally and uniformly upon all persons in similar circumstances.' * *

"The provisions of the statute in regard to the tax on legacies to strangers to the blood of an intestate need further comment. * *

"There are four classes created, and manifestly there is equality between the members of each class. Inequality is only found by comparing the members of one class with those of another. It is illustrated by appellant as follows: One who receives a legacy of $10,000 pays 3 per cent or $300, thus receiving $9,700 net, while one receiving a legacy of $10,001 pays 4 per cent on the whole amount, or $400.04, thus receiving $9,600.96, or $99.04 less than the one whose legacy was actually $1 less valuable. This method is applied throughout the class.

"These, however, are conceded to be extreme illustrations, and we think therefore, that they furnish no test of the practical operation of the classification. When the legacies differ in substantial extent, if the rate increases the benefit increases to greater degree.

"If there is unsoundness it must be in the classification. The members of each class are treated alike, that is to say, all who inherit $10,000 are treated alike—all who inherit any other sum are treated alike. There is equality, therefore, within the classes. If there is inequality it must be because the members of a class are arbitrarily made such and burdened as such upon no distinctions justifying it."

A statute of the State of New York imposing a tax at progressive rates was considered by the court in each of the cases of *Keeney* v. *New York, supra,* and *Watson* v. *State Comptroller,* 254 U. S. 122 (65 L. Ed. 171, 41 Sup. Ct. Rep. 43). The Supreme Court followed the principle of classification applied in the Magoun case, and in the Keeney case said:

"It is now well settled that the state may impose a graduated tax in this class of cases."

In the Watson case the court used the following language:

"The executors admit, as they must, that a classification is reasonable if made with respect to the

kind of property transferred; or, to the amount or value of property transferred; or, to the relationship of the transferees; or, to the character of the transferee,—for instance, as engaged in charity. * *

"But their list does not exhaust the possibilities of legal classification. (Citations.)

"Any classification is permissible. which has a reasonable relation to some permitted end of governmental action. It is not necessary, as the plaintiff in error seems to contend, that the basis of the classification must be deducible from the nature of the things classified,—here the right to receive property by devolution. It is enough, for instance, if the classification is reasonably founded in 'the purposes and policy of taxation.' "

The validity of federal enactments laying taxes at progressive rates and creating classes for the application of such rates based upon differences in the amount in the income of the taxpayer, or the amount or character of the transaction to which the tax related, was sustained by the Supreme Court of the United States in *Knowlton* v. *Moore*, 178 U. S. 41 (44 L. Ed. 969, 20 Sup. Ct. Rep. 747), and *Brushaber* v. *Union Pac. R. R. Co.*, 240 U. S. 1 (60 L. Ed. 493, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414, 36 Sup. Ct. Rep. 236, see, also, Rose's U. S. Notes). In *Knowlton* v. *Moore*, the court said:

"Taxes imposed with reference to the ability of the person upon whom the burden is placed to bear the same have been levied from the foundation of the government. So, also, some authoritative thinkers, and a number of economic writers, contend that a progressive tax is more just and equal than a proportional one. In the absence of constitutional limitation, the question whether it is or is not is legislative, and not judicial."

The validity of the progressive feature of the Oregon Income Tax Act as against the objection that it

violates the 14th Amendment to the Constitution of the United States is clearly established by the decisions of the Supreme Court in the Magoun case, and in the later cases above referred to, decided by that tribunal, wherein a system of graduated rates like that adopted by the Oregon act, was sustained.

3, 4. We will now consider whether the progressive feature of the Income Tax Act violates the Oregon Constitution. From the foregoing review of the decisions of the federal Supreme Court, it is manifest that the only limitation imposed upon the taxing power of the several states by the 14th Amendment is this,—all taxation shall be uniform upon the same class of subjects. For all practical purposes the limitation mentioned is identical with the restrictions imposed by the Oregon Constitution upon the power of taxation, the exercise of which is confided to the legislative assembly and to the people through the initiative, by that instrument. The state Constitution provides:

"§ 32, Art. I. All taxation shall be uniform upon the same class of subjects within the territorial limitations of the authority levying the tax."

"§ 1, Art. 9. The legislative assembly shall and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the state."

The foregoing provisions of the Constitution were adopted by amendment to that instrument in 1917, thereby repealing sections of the Constitution bearing the same numerical designation, respectively.

The state Constitution as originally adopted and until changed by the amendments above set out required that all taxation should be uniform and equal

and enjoined upon the legislative assembly, the duty
to provide for a uniform equal rate of assessment
and taxation. To that end the legislative assembly
was commanded to "prescribe such regulations as
shall secure a just valuation for taxation of all
property, both real and personal." These consti-
tutional mandates confined the legislative assembly
in the taxation of property, to the adoption of a pro-
portional tax; the percentage or rate of levy of the
tax was required to be absolutely equal upon all
property of whatever kind, and applied to all such
property upon a relatively equal assessed valuation
thereof, and while the power of the legislature to
divide property selected for taxation, into classes
was not restrained by these limitations, when prop-
erty was once selected, that property was required to
be valued and taxed at equal rates—that is, at the
rates of assessment and taxation applicable to all
other property: *Crawford* v. *Linn County*, 11 Or. 482
(5 Pac. 738); *Lake County* v. *Schroder*, 47 Or. 136
(81 Pac. 942).

The limitations mentioned applied only to the
taxation of property and did not apply to license,
privilege, occupation, excise and other taxes of like
character, which by common usage are not laid upon
property. As to such taxes, the state Constitution in
its original form imposed no restrictions upon the
power of the legislature beyond those contained in
the 14th Amendment to the federal Constitution:
*Kellaher* v. *City of Portland*, 57 Or. 575 (110 Pac.
492, 112 Pac. 1076), *Oregon* v. *Pacific States Tel. &
Tel. Co.*, 53 Or. 162 (99 Pac. 427), *Portland* v. *Port-
land Gas & Coke Co.*, 80 Or. 194 (150 Pac. 273, 156
Pac. 1070), and *Portland* v. *Portland Ry. L. & P. Co.*,

80 Or. 271 (156 Pac. 1058).   In the latter case, the court said:

"A property tax must be on an *ad valorem* basis, because it is a direct tax on property; but there is no constitutional requirement that a business or occupation tax shall be so measured."

Notwithstanding, the state Constitution in its original form did not prevent the imposition of taxes of the character last mentioned, the conviction became general, that the limitations of the Constitution which confined the legislature in the taxation of property to a proportional tax thereon were no longer adapted to the needs of the state. Demand was made for removal of those constitutional restrictions, which prevented the classification of property in respect to its nature, condition or class, and the imposition thereon of different rates of taxation upon different classes of property; and which excluded considerations of faculty or ability to pay, equality of sacrifice or governmental advantages provided to the taxpayer: See Voters' Pamphlet, Special Election, June 4, 1917, p. 14; Cooley on Taxation (4 ed.), §§ 254, 262; *Wheeler* v. *Weightman,* 96 Kan. 50 (149 Pac. 977, L. R. A. 1916A, 846); *State* v. *Bazille,* 97 Minn. 11 (106 N. W. 93, 7 Ann. Cas. 1056, 6 L. R. A. (N. S.) 732); *Maguire* v. *Trefry,* 253 U. S. 12 (64 L. Ed. 739, 750, 40 Sup. Ct. Rep. 479).

In order to remedy this condition, amendments to the Constitution in the form above set forth were submitted to the people and adopted by them at a special election, held Monday, June 4, 1917. As above indicated, the Constitution as amended places no restraint upon the power of the legislature in the matter of taxation which was not already enforced upon it by the 14th Amendment to the federal Con-

stitution, with this qualification, if it be a qualification, that among the members or objects included in a class selected by the legislature, inherent uniformity as well as territorial uniformity is required.

5, 6. This does not mean that the subjects of the class selected for taxation shall be precisely alike in all respects, but rather that they must be alike in the essential particulars which induced the legislature to include them in one classification. All within the class must be susceptible of like treatment and all the constituents of the class must be affected alike under like circumstances. Thus, from the standpoint of taxation, incomes, whether growing out of the ownership or use of property or derived from salaries, wages or compensation for personal service, possess so many attributes in common that they are readily susceptible of being grouped together for the purpose of the assessment, levy and collection of a tax upon incomes. And such a classification is not rendered invalid, or the tax void, as contended by plaintiff, as to the incomes included therein which grow out of the ownership or use of property, and like their sources, are property.

7. The existing provisions of the state Constitution relating to taxation do not limit the legislative authority to impose an income tax, and beyond the requirement that such tax shall be uniform upon the same class of subjects, those provisions place no restraint on the legislative power to classify incomes and levy a graduated tax thereon. Therefore, the Constitution is not violated by the provision of the Income Tax Act which includes incomes growing out of the ownership or use of property with incomes derived from personal services in the same class, nor by the feature of the Income Tax Act providing for a progressive tax upon such incomes.

The principle involved in this conclusion was applied by this court in the case entitled *In re Inman's Estate,* 101 Or. 182 (199 Pac. 615, 16 A. L. R. 675). In that case legislative authority to enact a statute imposing a tax upon inheritances was sustained; the act contained a classification and provision for graduated rates, the basis of which cannot be distinguished from that underlying the classification and progressive tax provided by the Income Tax Act. The law was upheld upon the theory that the limitations imposed upon the legislature in the exercise of its power of taxation did not apply to inheritance taxes.

8. The Income Tax Act does not impose a tax upon nonresident individuals who are not "doing business" in this state. The term "doing business" as used in the act is construed in the regulations adopted by the tax commission under authority conferred upon them by the act, to mean the carrying on or transacting of business in the ordinary and natural acceptation of those terms, with a fair measure of permanence and continuity: Articles 208–210.

The receipt of corporate dividends by a nonresident in the state of his domicile does not constitute "doing business" in this state within the meaning of the statute. Nonresident individuals doing business in the state, and thereby subject to the tax imposed by the Income Tax Act are entitled to identically the same exemptions as are accorded to residents, and the taxable incomes of such nonresident individuals are placed in the same class and are subject to precisely the same rates of taxation as apply to residents.

9, 10. The proviso attached to Section 3 of Article II does, however, require corporations doing business in the state which have nonresident stockholders to pay a tax not exacted from corporations likewise doing business in the state, none of whose stock-

holders reside in the state. The act allows every corporation doing business in the state to deduct from its net income any dividends declared and paid to residents of this state, but does not permit such a deduction upon account of similar dividends declared and paid to nonresidents of this state. The effect of the proviso is to require the corporation to pay a tax at the rates provided by the statute on the amount of dividends declared and paid to nonresident individuals, whereas if the same dividends are paid to residents, no tax is imposed upon the corporation in respect thereto.

To illustrate, three corporations are engaged in the same character of business in the state; all have the same amount of capital stock; they carry on business on the same plan; the gross income and the amount of the expenditures of each is the same; at the end of the year, each has net profits of $14,000 for distribution as dividends among its stockholders. All the stockholders of the first corporation are residents of this state; the corporation declares and pays dividends to these stockholders aggregating the sum of $14,000; it would be required to pay no tax under the statute. In the case of the second corporation, residents of this state hold one half of its stock and nonresidents hold the other half; it declares and pays a like dividend of $14,000; the corporation would be liable to a tax upon $7,000 at the progressive rates provided by the statute. The capital stock of the third supposed corporation is held by nonresidents of this state, and as in the two previous instances, the entire income of the corporation is paid to them as dividends; the corporation would be liable to a tax at the progressive rates upon an income of $14,000.

We are confronted here by a clear discrimination between corporations whose stockholders are all

residents of the state and corporations having in whole or in part, stockholders who are nonresidents of the state, and also between corporations having stockholders of the latter description and corporations whose stockholders are all nonresidents of the state.

The awkward provision referred to does not necessarily discriminate between resident and nonresident stockholders for the reason that each corporation affected thereby must be regarded as a legal entity distinct from its stockholders. As between the corporation and its stockholders, the corporation, for the purpose of ascertaining the amount to be distributed among stockholders as dividends, necessarily would include the amount of the income tax paid by the corporation as a legitimate expense of conducting the enterprise, and would deduct the same from its gross income. To that extent the amount available for distribution as dividends would be reduced. In that event the resident, as well as the nonresident stockholders, would be required to bear their proportionate shares of the income tax paid by the corporation.

While the procedure indicated would eliminate discrimination between resident and nonresident stockholders, it would, on the other hand, have the effect of doubly taxing those stockholders who are liable as individuals to payment of an income tax under the act. All the authorities counsel avoidance of double taxation wherever practicable, but they are agreed that double taxation as such, is not prohibited by either the state or the federal Constitution.

The proviso does not appear to be open to any admissible construction that will avoid illegal discrimination against corporations having all or part nonresident stockholders.

11. A corporation is a person, within the meaning of the last clause of the 14th Amendment to the federal Constitution, and is entitled to the equal protection of the laws guaranteed thereby: *Southern R. Co.* v. *Greene,* 216 U. S. 400 (54 L. Ed. 536, 17 Ann. Cas. 1247, 30 Sup. Ct. Rep. 287, see, also, Rose's U. S. Notes), and earlier cases cited therein.

12. Manifestly, corporations cannot be classed separately for purposes of state taxation merely because one or more of their respective stockholders happen to reside out of the state at the tax levying date. It is entirely clear that the proviso in question is void.

There remains for decision, the question whether the invalidity of the proviso to Section 3, Article II of the Income Tax Act destroys the act in its entirety.

13–15. It is a familiar principle that a statute may be constitutional in one part and unconstitutional in another part. In such a case, if the invalid part is severable from the rest, the portion which is constitutional may stand, while that which is unconstitutional is stricken out and rejected. Where, however, it is not possible to sever that which is unconstitutional from the rest of the act, then the whole statute falls: 6 R. C. L., p. 121; Cooley's Constitutional Limitations (7 ed), p. 247. The inquiry in all such cases is primarily one of legislative intention, and if it is clear from the statute itself that it was the intention of the legislature to enact the valid provisions of the statute irrespective of the others, the unconstitutional provisions will be disregarded and the statute read as if the latter provisions were not there: *Hale* v. *McGettigan,* 114 Cal. 112 (45 Pac. 1049); *Gantenbein* v. *West,* 74 Or. 334 (144 Pac. 1171); 6 R. C. L. 123.

In the case last cited, the statute under consideration provided an additional Circuit Judge for Multnomah County and directed that the position thus

created should be filled by the then County Judge of the county, and that the probate jurisdiction and the matters and proceedings pending therein should be transferred from the County Court to the Circuit Court. The part of the act creating an additional Circuit Judge was declared valid, and the other portion above mentioned was held to be unconstitutional.

The contention was advanced that the legislature would not have provided the additional Circuit Judge, if the provisions for the transfer of the County Judge and probate jurisdiction had been omitted. Mr. Justice McBRIDE, speaking for the court, said:

"On the face of the act they are not so interdependent that we can presume that such a result would have followed the omission of the last four sections. Such a conclusion would be to presume against the constitutionality of an act instead of in its favor; and it is a canon of statutory construction that if a statute can be given any reasonable interpretation consistent with its validity such interpretation should be adopted."

The subject matter of the proviso to Section 3, Article II of the Income Tax Act is not referred to in the title of the act. Neither the remainder of Section 3, nor any other part of the act is dependent upon it. The act is complete and presents a valid and comprehensive scheme of taxation without the proviso. The only effect of its omission from the statute is to deny corporations the right when making their tax returns, to deduct from their net income the amount of dividends declared and paid to residents, with a resulting increase of the tax paid by corporations. By the express provisions of the act an income tax is imposed upon corporations. The rejection of the proviso would not create any new tax; it would

merely deprive corporations of the benefit of a deduction not allowed to individuals in calculating taxable income.

In view of the foregoing observations, it cannot be said that the proviso was an inducement to the passage of the act, and the inference cannot be drawn from the act itself that the legislature would not have passed the valid portion alone,    However, we are not required to rely wholly upon the provisions of the act which relate directly to the tax imposed thereby, in order to discover the legislative intention.   Section 40 of the act provides as follows:

"If any clause, sentence, paragraph or part of this act shall, for any reason, be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder of this act, but shall be confined in its operation to the clause, sentence, paragraph or part thereof directly involved in the controversy in which such judgment shall have been rendered."

Referring to statutory provisions like the one above quoted, 6 R. C. L. 125 contains the following statement:

"Occasionally the legislature states its will that the valid provisions of a statute shall be enforced in spite of any judicial determination that certain sections of the act are unconstitutional.   Such an expression of the will of the legislature is generally carried out by the courts."

In the following cases the courts observed and complied with such a legislative direction: *State* v. *Clausen,* 65 Wash, 156 (117 Pac. 1101, 37 L. R. A. (N. S.) 466); *Snetzer* v. *Gregg,* 129 Ark. 542 (196 S. W. 925, L. R. A. 1917F, 999); *State* v. *Wilson,* 101 Kan. 789, 806 (168 Pac. 679, 686, L. R. A. 1918B, 374); *State* v. *Howat,* 107 Kan. 423 (191 Pac. 585, 588).   In the case last cited the court said:

"The rule is familiar that a part of a statute which is unobjectionable in itself may be enforced notwithstanding another part is adjudged unconstitutional. If it appears that the void portion was not an inducement to the enactment of the rest—that the Legislature desired the unobjectionable part to become a law irrespective of the validity of the remainder. Here the express declaration disposes of any possible doubt that might otherwise exist as to the legislative intent, and requires the court to give effect to all portions of the statute that do not in themselves violate some constitutional provision."

The above rule announced by the Kansas court applies to the instant case. Section 40 of the Income Tax Act is an express declaration by the legislature that it intended to adopt the Income Tax Act in its general scope notwithstanding the incorporation in the act of a paragraph which might be determined to be invalid, when subjected to judicial examination.

Whether a legislative intention thus declared will be controlling upon the court in all cases need not be decided. It is sufficient to say that this is a case in which the court should be guided by the direction and declared intention of the legislature.

It follows that plaintiff is not entitled to an injunction as prayed for in his complaint and accordingly the judgment of the Circuit Court is reversed and plaintiff's suit dismissed.

The foregoing opinion was written by Mr. Justice McCOURT before his death and is adopted as the opinion of the court.    REVERSED AND DISMISSED.

RAND, J., dissenting.