Argued September 9; reversed October 24, 1930; rehearing denied
January 29, 1931

REDFIELD ET AL. *v.* FISHER ET AL.
(292 P. 813, 295 P. 461)

*Erskine Wood* and *M. M. Matthiessen,* both of Portland (Wood, Montague & Matthiessen, of Portland, on the brief) for appellants.

*Willis S. Moore* and *Miles H. McKey,* Assistant Attorneys General (I. H. Van Winkle, Attorney General, on the brief) for respondents.

ROSSMAN, J. The complaint, after describing the plaintiffs and the defendants as above, together with the business in which the plaintiffs are engaged, recites the following matters: Each of the plaintiffs, during the year 1929 owned bonds, notes, shares of stock in private corporations and other intangible property of the type described in General Laws of Oregan, 1929, ch. 429, § 1, subd. (e). None of the intangibles owned by the plaintiffs were issued by the Federal Government and none of them are exempted from taxation by the laws of this state. Two of the plaintiffs, who are engaged in business as copartners under the firm name of Redfield & Wood, owned intangible property in the year 1929 employed in the ordinary course of their business, from which each received in that year

more than $500 by way of interest and dividends. These two individuals, during the same year paid interest in the sum of $200 upon capital borrowed by them for the purchase of intangibles. Each of the other three defendants in 1929 received as interest and dividends more than $500; and each paid during that year sums in excess of $200 on account of moneys borrowed to finance the purchase of intangibles. After the complaint had been filed counsel on behalf of the plaintiffs and the defendants subscribed to a stipulation which recited, among other matters, the following facts, and agreed that they should be deemed a part of the complaint. The plaintiffs, in order promptly to supply the demands of their trade, purchase quantities of securities and carry them in stock until sold to buyers. As a matter of common practice the value of the securities owned by the dealer to meet the requirements of his trade exceeds in a substantial sum the amount of his capital. The excess represents borrowed money upon which he is compelled to pay interest at the rate of not less than 6 per cent per annum. Each of the plaintiffs maintains an office in the city of Portland, wherein he conducts his business, and is subjected to all of the expenses incident to such a venture. There are many corporations engaged in the same line of business in competition with the plaintiffs and they pursue substantially the same practices employed by the plaintiffs. We quote from the stipluation the following:

"Persons residents and domiciled in the state of Washington are and in the year 1929 were engaged at Portland, Oregon, in conducting in Oregon the business of buying, owning and investing in notes made by Oregon residents and secured by mortgages on lands in Oregon."

The complaint recites various sections of the above mentioned act, also sections of the federal and Oregon constitutions; it charges that the act is invalid on account of its alleged conflict with these constitutional limitations in several respects. We shall mention them later.

General Laws of Oregon, 1929, ch. 429, is applicable only to individuals resident within this state. It imposes a tax of 5 per cent per annum "upon income from money and credits." It defines "money and credits" as intangible properties; that is, "money at interest, bonds, notes, claims and demands, secured or unsecured (not including open accounts) all shares of stock in corporations and any and all other evidences of indebtedness." In computing the amount of income subject to the tax each individual is granted an exemption of $200. The act specifies that the tax shall become a personal debt from the taxpayer to the state. If the tax is not paid within the time specified by the act severe penalties are added to the sum payable, and an expeditious method is provided whereby the tax payers' common property becomes subjected to liability for the delinquent tax and the accumulated penalties. Enforcement of the act is intrusted to the State Tax Commission. Since the other provisions of this enactment are not material to the issues before us we shall omit mention of them. It will be observed that, succinctly stated, the act imposes a tax of 5 per cent upon the gross income from intangibles received by all individuals residing within the state; the tax is exacted only from individuals. General Laws of Oregon, 1929, ch. 427, is applicable to corporations. The validity of the latter has not been challenged but due to the fact that both appellants and respondents have made

frequent reference to it we deem it advisable at this point to make a resume of its material provisions. It limits its scope to national and state banks, building, savings and loan associations, financial, manufacturing, mercantile and business corporations. This act requires every national bank within the state to pay annually "an excise tax according to or measured by its net income * * * at the rate of 5 per cent upon the basis of its net income;" further "every bank, other than a national banking association, and every financial corporation, building and loan association, savings and loan association and mutual savings bank, located within the limts of this state, shall annually pay to the state, for the privilege of carrying on or doing of business by it within this state, an excise tax according to or measured by its net income, to be computed in the manner hereinafter provided, at the rate of 5 per cent upon the basis of its net income." The act declares that the taxes exacted of banking institutions "shall be in lieu of all other state, county and municipal taxes upon the corporations and associations therein mentioned, except taxes upon their real property." Chapter 427 next provides:

"Every mercantile, manufacturing and business corporation doing business within this state, * * * shall annually pay to this state, for the privilege of carrying on or doing of business by it within this state, an excise tax according to or measured by its net income, to be computed in the manner hereinafter provided, at the rate of 5 per cent upon the basis of its net income * * * each corporation mentioned in this section 6 shall be entitled to an offset against said tax in the amount of taxes paid by it upon its personal property located in this state, but the offset shall not exceed 90 per cent of the said tax."

The act provides that if the gross income of a corporation is derived from business done both within and without the state the net income shall be determined only upon the portion done within the state. In computing net income corporations are permitted to deduct, amnong other items, interest payments, losses sustained during the year, and debts found to be worthless. The interest deduction "shall not exceed up to and including 5 per cent upon deposits or withdrawable shares in banks, building and loan associations, savings and loan associations and mutual savings banks, and shall not include the income on nonwithdrawable shares, nor on amounts credited to undivided profits or surplus." The act provides for credits in the event the taxpayer has become liable to a similar tax levied by another state upon the net income of his business. The remaining portions of the act are not sufficiently material to the issues before us to warrant mention.

By way of brief resume it will be observed that chapter 427 exacts a tax of 5 per cent upon the net income of corporations from all sources, and that chapter 429 imposes a tax of 5 per cent upon the gross income from intangibles owned by individuals only. The latter act makes no provision whereby an owner of securities who has made purchases by the use of borrowed capital can make deductions from his gross income for interest paid. In the event that some of his intangibles proves to be either totally or partially worthless he is entitled to no deductions on those accounts. Likewise operating expenses incurred by him incidental to his investment must be borne by him without deduction. A corporation, however, engaged in the same kind of business is permitted by chapter 427 to make all of these deductions in computing net

income. The plaintiffs insist that these circumstances establish their charges of discrimination. However, it is to be observed that chapter 427 requires corporations to include all gains received by them in computing net income; thus commissions earned in the sale of securities enter into the income upon which the tax is payable. The individual escapes taxation from all income except that received from interest and dividends.

Proceeding further with a review of these two acts we shall mention their titles and their purposes as expressed in the acts themselves. The title of chapter 429 is in part as follows: "To provide for the taxation of the income derived from money, bonds, * * *." Section 2 of chapter 429 is as follows: "A tax is hereby imposed on every resident taxpayer, which tax shall be levied, collected and paid annually at the rate of 5 per cent upon income from money and credits as herein defined." The title of chapter 427 is in part as follows: "To provide for an excise tax upon national banking associations * * *." Section 1 of this act states: "This act shall be known and cited as the excise tax of 1929." A subsequent provision of this act states: "The term 'excise tax,' as herein used, means a tax measured by or according to net income imposed upon national banking associations, * · * * and business corporations for the privilege of carrying on or doing business in this state."

Before setting forth our consideration of the validity of chapter 429 we shall mention chapter 317, General Laws of Oregon, 1927. The defendants contend that, by reason of the act just mentioned, chapter 429 levies a tax in lieu of the personal property tax which otherwise would be imposed upon intangibles. Gen-

eral Laws of Oregon, 1927, chapter 317, makes provision: "All stocks, bonds, notes and all moneys or debts due or to become due to any person, the dividends, interest or other income from which is taxable under the income tax law or laws which may hereafter be enacted, are hereby exempted from taxation as property."

The plaintiffs contend that chapter 429 is in conflict with section 32 of article I and section 1 of article IX of the Oregon Constitution and also in conflict with the portion of the 14th amendment to the Federal Constitution which restrains the states from denying to any person the equal protection of the laws.

The above mentioned provisions of our state constitution are as follows:

"Art. I, § 32. No tax or duty shall be imposed without the consent of the people or their representatives in the legislative assembly; and all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

"Art. IX, § 1. The legislative assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the state."

Specifically the plaintiffs contend that chapter 429 conflicts with the above constitutional provisions in the following: (1) the act makes an arbitrary classification between corporations and natural persons, taxing the latter 5 per cent upon their gross income from intangibles and exempting the former, (2) it makes an arbitrary classification between Oregon residents and residents of other states doing an investment banking business in this state, taxing the former and exempting the latter.

We deem it necessary at the outset to determine the nature of the tax which chapter 429 proposes to impose, that is whether it is an ad valorem tax imposed upon intangibles or is one assessed upon income as an excise. In the differences between these two kinds of taxes, as pointed out by Mr. Justice HARRIS in the following language quoted from *Portland v. Portland Ry. L. & P. Co.,* 80 Or. 271 (156 P. 1059), we find the occasion for the inquiry we shall now make:

"A property tax must be on an ad valorem basis, because it is a direct tax on property; but there is no constitutional requirement that a business or occupation tax shall be so measured: *Ellis v. Frazier,* 38 Or. 462 (63 P. 642, 53 L. R. A. 454). Judicial precedents have firmly established the rule that a definite per centum of the gross receipts of the business may be taken as the measure of the amount to be paid for the privilege of actually transacting a business, and, moreover, this method of ascertaining the amount of a license tax, whether on a business or for the privileges of doing business in a corporate capacity, is not necessarily a tax on the earnings: * * * If an ad valorem tax is levied on property, then, in the absence of statutory, charter, or constitutional restrictions, the only limits to the exercise of the power to tax are the necessities of the public treasury; but where a municipality is authorized to license occupations and businesses, either for the purpose of regulation or for revenue, the power cannot be used unreasonably, nor can the tax be fixed so high that it will practically prohibit the pursuit of ordinarily lawful businesses:"

■ The plaintiffs contend that the tax imposed by chapter 429 is a tax upon property; that is upon the intangibles themselves; the defendants insist that chapter 429 levies an income tax measured by the gross receipts which the owners of the intangibles derive from those investments. It is evident that if this tax

is unpaid upon the property itself then intangibles are taxed only when they are owned by individuals because the tax of 5 per cent levied upon the net income of corporations by chapter 427 is not a tax upon the intangibles, but is an excise levied upon the privilege of doing business in corporate form. The latter conclusion is warranted not only by the fact that counsel for both parties have so described the nature of chapter 427 but also by its plain phraseology and manifest purpose.

Many carefully reasoned cases can be readily assembled which held, under the circumstances present in them, that a tax on income from property is a tax upon the property which produced the income. One of the most notable of these decisions is found in *Pollock v. Farmers' Loan & Trust Co.,* 158 U. S. 601 (15 S. Ct. 912, 39 L. Ed. 1108) ; there the federal Supreme Court, after the matter had been twice argued, held that a tax on income derived from real or personal property is a direct tax upon the property which earned the income. In the very recent case of *Macallen v. Massachusetts,* 279 U. S. 620 (49 S. Ct. 432, 73 L. Ed. 874), the court applied that rule to the following situation: A statute of Massachusetts levied a tax of 2½ per cent upon the net income of corporations, and provided that net income should include earnings of tax-exempt securities including the obligations of the federal government. A direct tax upon the latter would be invalid. The court found that the act was intended to reach the interest produced by Federal tax-exempt bonds. Having thus concluded the court employed the rule that a tax on income is a tax upon the property which produced it, and held the statute invalid. In *Thompson v. McLeod,* 112 Miss. 383 (73 So. 193, L. R. A. 1918C, 893, Ann. Cas. 1918A, 674), the Mississippi court held that a legislative

enactment fixing a tax upon all persons pursuing the business of extracting turpentine from standing trees at the rate of one-fourth of one per cent for each cup was a property tax and not a privilege tax. In announcing its conclusion the court sets forth trite quotations from many of the decisions of other courts to the effect that a tax upon an essential attribute of a thing is a tax upon the thing itself. It quoted from Coke: "What is land but the profits thereof?" We repeat the following much-quoted language of the Massachusetts court:

"A tax upon income from money on deposit or at interest, from bonds, notes or other debts due, and as dividends from stocks, coupled with exemption from all other taxation of the principal from which such income flows, is in substance and effect a tax upon the property from which it is derived. A tax upon the income of property is in reality a tax upon the property itself. Income derived from property is also property. Property by income produces its kind, that is, it produces property and not something different. It does not matter what name is employed. The character of the tax cannot be changed by calling it an excise and not a property tax. In its essence a tax upon income derived from property is a tax upon the property. This was decided after most elaborate consideration, with affluent citation of authorities, in *Pollock v. Farmers' Loan & Trust Co.*, 157 U. S. 429, 581 (15 Sup. Ct. 673; 39 L. Ed. 759; Id. 158 U. S. 601, 15 Sup. Ct. 912, 39 L. Ed. 1108). We do not need to review that ground or to restate the arguments in its support. It follows that a tax upon such income is a property and not an excise tax. This point is covered also by Opinion of the Justices, touching the so-called three-mill tax, reported in 195 Mass. 607, 84 N. E. 499. We adhere to the principles there stated and to the conclusion there reached. To the same effect see *Opinion of the Justices,* 77 N. H. 611 (93 Atl. 311)." *In Re Opinion of the Justices,* 220 Mass. 613 (108 N. E. 574).

■■ In fact the courts have so many times an-. nounced the conclusion that a tax upon income is a tax upon the property which produced the income that the editor of Ruling Case Law thus expresses the rule: "It is probably now generally conceded that a tax laid directly upon the income of property is a tax upon the property itself": 26 R. C. L., Taxation, § 116, p. 141. Credits, the right to receive money of the debtor, are always held taxable as a species of property: *Re Opinion of the Justices,* 77 N. H. 611 (93 Atl. 311). Without setting forth any further review of the authorties we believe that the conclusion is well justified that a tax laid directly upon the income of property, real or personal, may well be regarded as a tax upon the property which produced the income.

■■ Much well-reasoned authority may also be found to support the proposition that income is itself property, especially when it is the product of property as distinguished from personal effort. The much-cited case of *Waring v. Savannah,* 60 Ga. 93, held that income was not property until it was invested, placed in a bank, or locked up at home as reserve. We quote from the decision: "Property is a tree; income is the fruit; labor is a tree; income the fruit; capital the tree; income the fruit; * * * but so long as it is fruit merely, and plucked to eat, and consumed in the eating, it is no tree, and will produce itself no fruit." In the case just mentioned the income was derived from both capital and labor. In *Eliasberg Bros. Merc. Co. v. Grimes,* 204 Ala. 492 (86 So. 56, 11 A. L. R. 300), the court held that income is property within the meaning of the state constitution which prohibited the legislature from levying a tax at a greater rate than sixtyfive one-hundredths of one per cent "on the value of

the taxable property within this state" and criticised the syllogism of the Georgia court above mentioned by pointing out:

"* * * Investing, or depositing or locking up what is received as income, changes not its character, but merely its use; and the notion that a tree is property, while its fruit is not, cannot be sustained upon any principle of logic or common sense."

Before announcing its conclusion the Alabama court reviewed a large number of decisions by the courts of other states holding that income is property. See also *Hattiesburg Grocery Co. v. Robertson,* 126 Miss. 34 (88 So. 4, 25 A. L. R. 748). The conception that income from property is property received recognition in the well considered decision written by Mr. Justice McCourt in *Standard Lmbr. Co. v. Pierce,* 112 Or. 314 (228 P. 812), wherein he stated: "And such a classification is not rendered invalid, or the tax void, as contended by plaintiff, as to the incomes included therein which grow out of the ownership or use of property, and like their sources, are property." In all of the cases just referred to, with the exception of the last, the income was net income and it was the product of both labor and capital. In the Pollock, Macallen and Thompson cases the income was derived from capital or property only. In the Macallen case the taxpayer, after computing his net income, was required to add to it his total receipts from tax-exempt securities and thus the 2½ per cent tax, levied by the Massachusetts act, operated upon that income similar to the 5 per cent tax imposed by our present act. The income, which chapter 429 proposes to tax, is the gross income earned by securities. An interest coupon, attached to a bond, is as distinctly property as is

the bond itself. Such a coupon could readily be made the subject-matter of an action of conversion or of replevin. One who feloniously deprives the owner of the coupon can be prosecuted for larceny, and if the bond itself can be taxed it is difficult to understand why the interest coupon should escape taxation. Such being the situation before us we are persuaded that under these circumstances, at least, income can be considered property.

Having concluded that a tax imposed by the legislature upon the gross income of property may be considered as a tax upon the property which produced the income, and also that a tax upon gross income from property may well be held a tax upon property, we come now to the problem whether a legislative intent is expressed in chapter 429 to tax property, or to levy an income tax in an amount measured by 5 per cent of the gross receipts from intangibles. In other words, is the purpose of this act to impose a tax upon intangible property, or to take from the recipient of income from intangibles a portion thereof as remuneration to the state for the privileges bestowed by it which enabled the taxpayer to produce, receive, accumulate and enjoy his properties? In determining this problem we notice that the same session of the legislature which enacted chapter 429 also made provision for an income tax, and clearly expressed its purpose in that regard: General Laws of Oregon, 1929, chapter 448, p. 678. (The enforcement of this statute has been withheld due to the referendum laws of this state). If chapter 429 was intended to tax income it is difficult to understand why it was not included as a part of chapter 448, which also taxes the income of individuals only. Further, it will be observed that the tax imposed by chapter 429

operates upon gross income and not upon net income. While it may be possible to write an income tax statute which operates on gross income yet the present departure from the general practice is somewhat persuasive that the tax was not intended as one imposed upon income. Moreover, a tax upon gross income finds. but little support in the economic reasons which sustain income taxes. It is the theory of such taxes that they cast the burden of governmental-maintenance upon those best able to bear it. But gross income does not necessarily indicate the possession of available surplus. When gross receipts can be regarded as reliable evidence of the value of the property which produced them, taxes upon gross receipts are frequently regarded, not as excise taxes but as taxes upon property; the cases will be found cited in Cooley on Taxation, (4th Ed.) §§ 157 and 844. The gross receipts from the intangibles mentioned in this statute, we believe, can be fairly regarded as true representations of the value of the properties which produced them. Income taxes generally do not select as the subject-matter of their levies the income from one source only and neglect all others. This conception of such taxes is given voice in *Young v. Illinois Athletic Club,* 310 Ill. 75 (141 N. E. 369, 30 A. L. R. 985). The very fact, therefore, that chapter 429 is applicable only to intangibles, while chapter 448 taxes general income received by individuals, is persuasive that chapter 429 is not an income tax. It is true that section 2 of the act declares: "A tax is hereby imposed on every resident taxpayer, which tax shall be levied * * * at the rate of 5 per cent per annum upon income from * * *." The title of the act, which we have already quoted, contains a similar intimation that possibly the legislature

regarded the act as an income tax statute. But if these be deemed legislative declarations that the act is an income tax statute, it is nevertheless true that such declarations, while entitled to serious consideration, are not controlling upon the courts. It is our duty to determine for ourselves the true nature of this tax: *Macallen v. Massachusetts,* supra. Many authorities to like effect are cited in *Aberdeen Savings & Loan Ass'n v. Chase,* 157 Wash. 351 (289 P. 536). In the case last mentioned and also in *Burr v. Chase,* 157 Wash. 393 (289 P. 551), the supreme court of our neighboring state passed upon the validity of an enactment of the legislature of Washington which contained some taxation provisions similar to those before us. The tax was imposed, however, upon the receipts of corporations only and required them to make returns (among other items) "on interest received from federal, state, municipal or other bonds, and, except as hereinafter otherwise provided, all dividends received on stocks * * *." The act recited its purpose in phraseology similar to that employed by chapter 427 previously quoted; that is, that it was an excise imposed for the privilege of doing business in corporate form. The Washington court held that it constituted a property tax. The fact that intangibles have escaped taxation in this state is so well known that we feel we are justified in taking notice of that fact. Likewise there has been an insistence that intangibles should discharge their fair portion of the tax burden like other property. Having in mind all of the foregoing it is our conclusion that chapter 429 was intended to levy a tax upon property and was not enacted as an income tax statute.

Having reached the conclusion that chapter 429 levies a tax upon property it is at once evident that

such property is taxed only when it is owned by an individual. Chapter 427 does not endeavor to tax intangibles. The tax imposed by it, as the act itself expressly declared, is upon the corporate franchise which is a type of property not possessed by those who are affected by chapter 429. Payment of the sums exacted by chapter 427 constitutes the corporations' remuneration to the state for the privilege of doing business in corporate form. We have taken the following from *Flint v. Stone Tracy Co.*, 220 U. S. 108 (31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312) :

"* * * The thing taxed is not the mere dealing in merchandise, in which the actual transactions may be the same, whether conducted by individuals or corporations, but the tax is laid upon the privileges which exist in conducting business with the advantages which inhere in the corporate capacity of those taxed, and which are not enjoyed by private firms or individuals. These advantages are obvious, and have led to the formation of such companies in nearly all branches of trade. The continuity of the business, without interruption by death or dissolution, the transfer of property interests by the disposition of shares of stock, the advantages of business controlled and managed by corporate directors, the general absence of individual liability, these and other things inhere in the advantages of business thus conducted, which do not exist when the same business is conducted by private individuals or partnerships. It is this distinctive privilege which is the subject of taxation, not the mere buying or selling or handling of goods, which may be the same, whether done by corporations or individuals."

■ The individual, unlike the corporation, cannot be taxed for the mere privilege of existing. The corporation is an artificial entity which owes its existence and charter powers to the state; but the individual's

right to live and own property are natural rights for the enjoyment of which an excise cannot be imposed: 26 R. C. L., Taxation, § 209, p. 236; Cooley, Taxation, (4th Ed.), § 1676; *Opinion of the Justices,* 195 Mass. 607 (84 N. E. 499). Thus when the corporation pays 5 per cent of its net income to the state in obedience to chapter 427, it has not paid an ad valorem tax based upon the value of its intangibles, or calculated upon the return from such possessions, but has discharged an entirely different tax imposed for a very different reason.

Thus we have a situation where the individual is compelled to pay a tax upon his intangibles while the corporation escapes entirely from this tax; yet the tax could be levied as well upon the corporation as upon the individual. Double taxation would not result if the corporation were given credit upon its excise tax for any payments made upon its intangible tax. The legislature cannot grant an exemption from a tax on property by accepting as a substitute an excise tax not based upon the value of the property of the exempted individuals: 26 R. C. L., Taxation, § 223, and Cooley on Taxation (4th Ed.), §§ 662 and 663.

The effect of the fourteenth amendment to the Federal Constitution wherein it guarantees to all the equal protection of the laws, and the provisions of the Oregon Constitution, previously quoted, requiring uniformity and equality in taxation were recently ably expounded by Mr. Justice McCourt in *Standard Lmbr. Co. v. Pierce,* supra. We quote from *Atchison, etc., Railroad Co. v. Matthews,* 174 U. S. 96 (19 S. Ct. 609, 43 L. Ed. 909):

"The equal protection guaranteed by the constitution forbids the legislature to select a person, natural or artificial, and imposes upon him or it burdens and

liabilities which are not cast upon others similarly situated. It cannot pick out one individual, or one corporation, and enact that whenever he or it is sued the judgment shall be for double damages, or subject to an attorney's fee in favor of the plaintiff, when no other individual or corporation is subjected to the same rule. Neither can it make a classification of individuals or corporations which is purely arbitrary, and impose upon such class special burdens and liabilities. Even where the selection is not obviously unreasonable and arbitrary, if the discrimination is based upon matters which have no relation to the subject sought to be accomplished, the same conclusion of unconstitutionality is affirmed."

In *Standard Lmbr. Co. v. Pierce,* supra, this court declared that classification must "rest upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced shall be treated alike." In *Quaker City Cab Co. v. Pennsylvania,* 277 U. S. 389 (72 L. Ed. 927, 48 S. Ct. 553), the federal Supreme Court held invalid a statute which imposed a tax of 8 mills per dollar upon the gross receipts of corporations engaged in the transportation of persons and freight, but made no mention of individuals engaged in the same pursuit. The court declared, "The character of the owner is the sole fact on which the distinction and discrimination are made to depend. The tax is imposed merely because the owner is a corporation. The discrimination is not justified by any difference in the source of the receipts or in the situation or character of the property employed." In *Frost v. Corporation Commissioners,* 278 U. S. 515 (73 L. Ed. 483, 49 S. Ct. 235), the same court said, "A classification which is bad because it arbitrarily favors the individual as against the corporation certainly can not be good when it favors the corporation as against the individual."

It must be evident that chapter 429 is invalid unless other circumstances not yet considered by us come to its support. The attorney general believes that the act can be sustained by disregarding the corporate entity, and comparing the situation of a group of individuals engaged in the investment banking business, as a partnership, with another group engaged in the same business who have incorporated their association. He argues that the first group would be taxed only under chapter 429, while the second group would be taxed twice; once by reason of chapter 427, and a second time when the profits of the enterprise are passed from the corporation to the stockholder in the form of dividends. In comparing the conditions of the two groups we must disregard the tax imposed by chapter 427 because that is a sum taken from the second group on account of a special corporate privilege which it enjoys, and which the first group evidently felt it could not afford. But let us now determine whether chapter 429 will operate equally upon both groups. If it were evident that the corporation would distribute to the associates all of its profits like a partnership is bound to do then every dollar of corporate profits would be taxed, and the two groups would be brought into an equal condition. But it is common knowledge that all of the profits of a corporation are rarely distributed to the stockholder. In fact, under the spur of modern taxation laws only the inescapable minimum is thus distributed in cash. In financial corporations, of the type that are in competition with the plaintiffs, reserves, surpluses, and undivided profits are constantly augmented from annual net earnings. These earnings, retained in the corporations' possession, and distributed from time to time

by means other than cash dividends, would entirely escape taxation under chapter 429. For instance, section 1, subdivision f, exempts stock dividends from inclusion in compiling individual net income. Hence the tax on dividends would fail as a practical matter from bringing the two groups into substantially the same condition. The burden of taxation borne by the stockholders would be substantially less than that borne by the individual.

■ It is also contended by the defendants that the combined effect of the act now before us and chapter 317, General Laws of Oregon, 1927, previously quoted, is to relieve the owner of the personal property tax upon his intangibles when he has discharged the tax assessed by chapter 429. In other words the attorney general argues that the tax assesed by chapter 429 is in lieu of the personal property tax and is therefore valid. Disposing of this contention it is or opinion that chapter 317, General Laws of Oregon, 1927, exempted intangibles from the personal property tax only when their owner had been subjected to an income tax, and had reference to the income tax statute before this court in *Standard Lmbr. Co. v. Pierce*, supra, which is no longer a law at this time. Since we have held that chapter 429 is not an income tax law but is a property tax law, chapter 317, General Laws, 1927, has no application. Moreover, as a practical matter no personal property tax is imposed upon intangibles, and finally since chapter 427 exempts corporations from some of the existing tax burdens upon payment of the excise tax the unfavorable condition of the individual is as burdensome after the exemption from the personal property tax as before.

■ It follows from the foregoing that in our opinion chapter 429, General Laws of Oregon, 1929, is invalid

on account of the fact that it discriminates in an unreasonable manner between the individual and the corporation in the levying of the tax enacted by it and therefore denies to the individual the equal protection of the laws.

So far we have made no mention of *Conner v. State,* 82 N. H. 126 (130 Atl. 357), *Opinion of the Justices,* 77 N. H. 611 (93 Atl. 311), and *Shields v. Williams,* 159 Tenn. 349 (19 S. W. (2d) 261), upon which the attorney general especially relies in support of this act. In *Connor v. State* the tax statute, the validity of which was upheld, was substantially similar to that now before us. The intangible tax statute sustained in *Shields v. Williams* made no discrimination between corporations and individuals. In fact, the decision is entirely silent upon that subject. The references made by the court to the statute as an income tax statute were induced by the fact that the Tennessee constitution provided: ''The legislature shall have power to levy a tax upon incomes derived from stocks and bonds that are not taxed ad valorem.'' The New Hampshire decision entitled ''Opinions of the Justices'' was rendered in answer to a question concerning the power of the legislature to levy a tax upon income received from intangibles, and it also was not concerned with discriminations between individuals and corporations. Its importance is due to the intimations contained in it that such a tax constitutes an income tax and by reason of a statement contained in it which we shall later quote. We appreciate the importance of the decision in *Connor v. State* and have given to it much consideration on account of our respect for the tribunal which wrote it. The New Hampshire court was persuaded that a tax upon the income received by a corporation from intangibles and a tax

imposed upon the dividends received by the stockholder would in effect constitute double taxation in violation of the constitutional limitations of that state. It, therefore, concluded that the legislature could properly make a classification and exempt the corporation from the payment of the tax. It believed that the number of the corporations which would not pass on their full earnings to their stockholders in cash dividends would be negligible. But it will be observed that income from intangibles is only one of the numerous sources from which a corporation derives gain, and if the above argument of the court should be carried to its logical conclusion all of the corporations' properties would escape taxation because eventually the profits from these various other sources would be taxed when they came into the stockholders' hands as dividends. We also observe that the New Hampshire court declared that under the constitution of that state the "power to impose disproportionate taxes" was "specially permitted." In *Opinions of Justices*, 77 N. H. 611 (93 Atl. 311), the court had written in answer to the aforementioned question propounded by the legislature:

"The tax upon rent is a direct tax upon the land out of which the rent issues. The tax upon the income of bonds is a direct tax upon the bonds themselves. The tax upon interest is a direct tax upon the money which earns the interest."

In *Opinions of the Justices* (N. H.) 149 Atl. 311, we take the following excerpts from the court's answer to a further question propounded by the legislature:

"Improvements and betterments upon the corporate estate, or a surplus held in the treasury, would not be passed on to stockholders, and they would thus escape taxation if the business were incorporated, whereas they would be taxable in the case of an indi-

vidual owner. * * * Such a provision would obviate the defect in the present income tax law, under which dividends, received by local corporations and by them in turn paid out as dividends to nonresident stockholders, go tax free.''

For the reasons above pointed out we decline to follow *Connor v. State* as a precedent. The tax is sustained was imposed under a provision of the New Hampshire constitution which authorized taxes upon ''* * * and other classes of property,'' hence we assume that the court regarded it as a tax upon property although loose expressions in the opinion may indicate that it entertained other views.

We have given earnest consideration to the failure of the act to tax intangibles permanently deposited in this state by nonresidents to facilitate their use in business ventures here conducted by their owners. Such a tax would be valid: *Shaffer v. Carter,* 252 U. S. 37 (64 L. Ed. 445, 40 S. Ct. 221), and *Travis v. Yale & Towne Mfg. Co.,* 252 U. S. 60 (64 L. Ed. 460, 40 S. Ct. 228).

It follows from the foregoing that in our opinion chapter 429 is invalid due to its conflict with the provisions of the fourteenth amendment to the federal constitution which guarantees the equal protection of the laws. We have not discussed in the foregoing opinion all of the numerous authorities cited by counsel on both sides although we have read and studied them carefully. The briefs in this case, as well as in the two companion cases of *Kiernan v. Norblad et al.* and *Miller v. Norblad et al.,* display industry and skill. The cause will be remanded to the circuit court with instructions to enter a decree in harmony with the prayer of the complaint.

KELLY, J., did not participate in this decision.

Petition for rehearing denied January 29, 1931

ON PETITION FOR REHEARING
(295 P. 461)

*Wood, Montague and Matthiessen,* of Portland, for appellants Scott Redfield and others.

*Dey, Hampson and Nelson,* of Portland, for appellants Frank Kiernan and A. E. Miller.

*I. H. Van Winkle,* Attorney General, and *Willis S. Moore,* Assistant Attorney General, for respondents.

*Arthur C. Spencer* of Portland, *Ralph S. Hamilton* of Bend, *A. A. Smith* of Baker, and *Roy F. Shields,* of Portland, amici curiae.

ROSSMAN, J. The petition for a rehearing is accompanied with two extensive briefs which display evidence of much industry facilitated by learning. Of the one brief the Attorney General is the author, while the other represents the labors of a group of attorneys whose interest in the attacked statute arose many months ago when those attorneys, together with others, made an effort to solve the tax problem of their state by suggesting some tax legislation. The skillful argument presented in these briefs tempts us strongly to set forth our views upon the many subjects discussed by the amplified arguments, but the fact that the biennial session of the legislature is now in progress persuades us that promptness in finally disposing of this suit will better serve the situation than a further recital of our views.

The Attorney General seems to remain convinced that chapter 429 of 1929 Session Laws, which is the act under attack, identifies itself as an income tax statute and that our decision fails to pay sufficient heed

to these identifying earmarks. However, we notice that tax legislation of other states which presented even more evidence of being income tax statutes, have been held to be in reality property tax statutes. See, for instance, *Cudahy Packing Co. v. Minn.*, 246 U. S. 451 (38 S. Ct. 373, 62 L. Ed. 827). In determining the nature of the tax the practical operation of the statute and its actual effect are very important circumstances: *Quaker City Cab Co. v. Pa.*, 277 U. S. 389 (48 S. Ct. 553, 72 L. Ed. 927); *Shaffer v. Carter*, 252 U. S. 37 (64 L. Ed. 445, 40 S. Ct. 221), and *Nicol v. Ames*, 173 U. S. 510 (43 L. Ed. 786, 19 S. Ct. 522). The ultimate effect of chapter 429 is to take from intangibles a part of their value. It clips from a bond a part of the interest coupons as effectively as if the state performed the physical act. That piece of tax legislation operates upon its subject-matter—intangible property—more directly than the ad valorem tax on real property. It is these circumstances together with the others mentioned in our previous decision which have brought us to our conclusion that this statute imposes a tax upon property.

Concern is expressed in the briefs lest our previous decision was intended to overrule *Standard Lmbr. Co. v. Pierce*, 112 Or. 314 (228 P. 812). No such thought was in our minds. Quite to the contrary we referred to that decision with approval. We believe that an obvious distinction exists between the situation brought before this court in that suit and the circumstances disclosed by the instant case. The statute there in question was conceded by all to be an income tax statute and hence this court was not called upon to determine its nature. Moreover, that act levied a graduated rate upon the net income received by the taxpayer from his various sources of income. The present act imposes a tax of 5 per cent upon the gross

income from a definite type of property only, that is intangibles. We believe that a very substantial difference exists between the nature of a tax which takes from interest, before it has become mingled with other items of income, a portion thereof, and another tax which lumps all income into one sum, and takes a part of it only after net income has been determined by the subtraction of many allowances. The former is the situation now before us; the latter was the tax legislation disposed of by Mr. Justice McCourt's decision in *Standard Lmbr. Co. v. Pierce.* A further distinction is also worthy of notice. The case just mentioned brought before the court only one act. In our present situation we are confronted with three; the two additional acts afford evidence of the nature of the third. One of the three is obviously an income tax statute and makes no pretentions to the contrary; another expressly states that it imposes ''the excise tax'' and defines those words as a levy upon the privilege of doing business in this state in corporate form. This evidence we feel is worthy of consideration in determining the nature of the remaining act. These various circumstances convince us that no conflict exists between *Standard Lmbr. Co. v. Pierce* and our previous decision in this case.

Counsel also evidence apprehension lest our quotation from *Portland v. Portland Ry. L. & P. Co.,* 80 Or. 271 (156 P. 1058), which applied the sections of our state constitution applicable to taxation as they existed prior to the amendment of 1917, was intended as a construction of the amended sections. The excerpt taken by us from that case was employed only by way of illustration, and not for the purpose of construction. We felt safe in so using it in view of the fact that our

decision nowhere attempted to construe the amended sections of our constitution. Our decision closes with the statement: ''Chapter 429 is invalid, due to its conflict with the provisions of the 14th amendment to the federal constitution which guarantee the equal protection of the laws.''

Next the suggestion is made that we should construe the three statutes, that is, chapters 427, 429 and 448 as three income tax statutes, and that having done so it will be apparent that no improper discrimination had been made between corporations and individuals. Until the petition for rehearing had been filed the Attorney General's brief referred to chapter 427 as a statute, which exacted a tax of corporations for the privilege of carrying on business in corporate form. We quote from his brief the following: ''The amount of tax imposed by chapter 427, Laws of 1929, is computed upon the basis of net income, and is to be paid for the privilege of carrying on or doing business in this state. The procedure for determination of the net income upon which said taxes are computed is set forth in detail, and differs very materially from that applying to the tax imposed by chapter 429.'' Our study and analysis of that act brought us to the same conclusion. We are aware of no reason for changing that opinion. Being of that opinion it is evident that even if we should hold that chapter 429 is an income tax statute, still a discrimination would exist between the individual and the corporation. The former would be taxed at the rate of 5 per cent upon his gross income from intangibles and would also be subject to a further tax upon his net income from all other sources (levied by chapter 448) while the corporation would escape both of these taxes and be subject only to the excise tax.

It seems to us that if the Legislature did not intend that these three acts should reach different subjects of taxation it would not have entitled them with different names and would have written them as one act. This circumstance while not conclusive is very significant.

It is also argued that an excise tax upon corporations may be imposed as a substitute for a personal property tax payable by individuals without violating constitutional provisions and that the tax imposed by chapter 427 should be regarded as a substitute for the one imposed by chapter 429. We are willing to subscribe to the proposition of law upon which this argument is founded but do not believe that the tax imposed by chapter 427 was intended as a substitute tax. We remain convinced that it was intended as a charge for the benefits conferred by the corporate franchise. Moreover, while chapter 427 exempts the corporation from the personal property tax upon the payment of the excise tax, chapter 429, contains no such provision. The validity of numerous tax statutes has been sustained which dealt with the individual in a manner different from the corporation, yet in all of those instances the reason for the different treatment was made apparent. In the present statute the discrimination operates to the disadvantage of the individual, but no reason therefor has come to our attention.

Various other matters are argued in the petition for a rehearing. They have all received careful consideration, but we find in them no sufficient reason for departing from our previously announced decision.

The petition is denied.

KELLY and CAMPBELL, JJ., did not participate.