Argued November 13; modified December 15, 1936

WALLER *v.* LANE COUNTY ET AL.

## PACIFIC HOSPITAL SOCIETY *v.* LANE COUNTY ET AL.

(63 P. (2d) 214)

In Banc.

*Mark Weatherford,* of Albany, and *David Evans,* of Eugene (Immel & Evans and Harris, Smith & Bryson, all of Eugene, on the brief), for appellants.

*Donald Young,* Deputy District Attorney, of Eugene (L. L. Ray, District Attorney, of Eugene, on the brief), for respondents.

KELLY, J. It is claimed that the property involved herein is, and at all times during which the assessments for taxes have been made thereon, has been exempt from taxation by virtue of subdivision 3 of section 69-104, Oregon Code 1930, which is as follows:

"Section 69-104. Exempt property.—The following property shall be exempt from taxation:

&ast;  &ast;  &ast;  &ast;  &ast;

162

■ The personal property of all literary, benevolent, charitable and scientific institutions incorporated within this state, and such real estate belonging to such institutions as shall be actually occupied for the purposes for which they were incorporated.''

The property involved herein consists of hospital grounds, building and equipment operated as a hospital in the city of Eugene, Oregon.

The taxes in question are those assessed against the real property as follows: For the year 1930 in the sum of $1,538.11; for the year 1931 in the sum of $1,393.88; for the year 1932 in the sum of $1,401.07; for the year 1933 in the sum of $1,544.70; and against the personal property as follows: For the year 1930 in the sum of $508.94; for the year 1931 in the sum of $461.20; for the year 1932 in the sum of $465.30; and for the year 1933 in the sum of $427.50.

For the purposes of this case we need only to say that the International Bible Mission acquired title to the property in suit and executed a deed conveying it to the First National Bank of Eugene in trust to secure payment of an issue of bonds. The bondholders were almost exclusively aged members of the Christian Church.

The Pacific Christian Hospital was organized on the 28th day of March, 1928, and thereupon the property in suit was transferred by deed from the International Bible Mission to the Pacific Christian Hospital, subject to said deed of trust. The Pacific Christian Hospital completed the erection of the building and operated said hospital from the time of said transfer at a financial loss, resulting in the accrual of unpaid bills.

■ On June 6, 1929, Dr. H. H. Foskett entered into an agreement with the Pacific Christian Hospital whereby said Foskett took charge of said hospital and operated

the same. The bills receivable and accounts of the Pacific Christian Hospital were assigned to said Foskett and the Pacific Christian Hospital agreed to make six payments of $1,000 each at times stated in said agreement. The proceeds to be derived from the operation of the hospital, the amounts realized from said bills receivable and accounts and the payments above mentioned were to be paid to the creditors of said Pacific Christian Hospital by said Foskett. In brief, Foskett became an assignee of the bills and accounts for the benefit of creditors and the intermediary between the creditors and the hospital society. These creditors held claims for material furnished and services rendered in the operation of said hospital by the Pacific Christian Hospital and the property involved herein was at all times subsequent to said 6th day of June, 1929, actually occupied and operated as a hospital.

We find nothing in the contract with Dr. Foskett which deprived the Pacific Christian Hospital of the property in suit. During his administration of the affairs of the hospital, both the personal and the real property belonged to the institution known as the Pacific Christian Hospital. As stated, during this period the property was actually occupied for the purposes for which the institution was incorporated. This institution being a benevolent and charitable institution incorporated within this state, and the property in suit belonging to it and being so used and occupied, we think the property was exempt from taxation during that time.

It is urged that the agreement with Foskett was a lease, but we do not so construe it. It is also urged that the purpose of operating the hospital during Dr. Foskett's tenure was merely to reinmburse individual creditors; but this argument loses sight of the manner

of the operation of the hospital which was such that no one needing hospitalization was turned away because of inability to pay for it, and the services rendered and the material furnished upon which the claims of these creditors were based contributed to make such manner of operation possible.

Dr. Foskett superintended the operation of the hospital until April 7, 1931, when an action was instituted by a creditor of the Pacific Christian Hospital; and Dr. A. O. Waller was appointed receiver. Dr. Waller operated the property as receiver from April 7, 1931, to April 3, 1933. During Dr. Waller's administration, the same policy as theretofore was pursued with respect to those without funds, who were in need of hospitalization. No one was denied because of inability to pay and the same service was extended without respect to creed, race or color.

The deed of trust securing the bonds was foreclosed and on the 6th day of April, 1932, the property in suit was sold upon execution in said foreclosure proceeding to the First National Bank of Eugene, as trustee for the bondholders. There was no redemption from said sale and on April 6, 1933, a sheriff's deed was executed conveying said real property to said First National Bank of Eugene, as trustee.

On the 30th day of December, 1933, said First National Bank of Eugene sold and conveyed said property to the First National Bank of Junction City, Oregon, as trustee for said bondholders. Said First National Bank of Junction City, as trustee, continued as owner of all of said real and personal property until the 26th day of February, 1934.

We think that during Dr. Waller's administration, as well as that of Dr. Foskett, the property was occu-

pied and used for the purpose for which the Pacific Christian Hospital was incorporated.

We find nothing upon which to hold that the property did not belong to said last named institution, except the mortgage or deed of trust securing the bondholders, the foreclosure thereof, the sale upon execution, the confirmation thereof, the sheriff's deed to the First National Bank of Eugene, the deed of that bank to the Junction City Bank and its deed to plaintiff Pacific Hospital Society.

This brings us to a consideration of the effect upon the privilege of exemption of the sale upon execution of the property in suit.

As to the personal property, there can be no question that, at least from the date of such sale, April 6, 1932, it did not belong to the Pacific Christian Hospital. Neither did it belong to any literary, benevolent, charitable or scientific institution. It belonged to a bank as trustee for individual bondholders.

■ The purchaser of exempt property at judicial sale does not acquire the privilege of exemption, unless the statute in terms provides therefor, or unless the exemption is appurtenant to the particular property: 61 C. J. Taxation, p. 405, section 413 b.

■ From April 6, 1932, to February 26, 1934, when the property was conveyed to plaintiff, the Pacific Hospital Society, this property was not exempt from taxation. The Pacific Hospital Society is a benevolent and charitable institution incorporated within this state; and since February 26, 1934, has owned the property in suit and occupied and used it for the purposes for which said institution was incorporated.

■ As to the real property, while the authorities in other jurisdictions are in conflict, we think that, with respect to liability for taxes, the effect of the deed exe-

cuted by the sheriff after the confirmation of a sale upon execution is to relate back to the date of the sale.

In determining this question, the statutory provisions must be borne in mind. Under the statute, the purchaser, from the day of the sale, is entitled to the possession of the property purchased unless the premises are in possession of a tenant under an unexpired lease and in such case the purchaser is entitled to the rents, or the value of the use and occupation during the same period: Section 3-510, Oregon Code 1930. In case of redemption, an accounting shall be had between the purchaser and the redemptioner wherein the amount of any taxes the purchaser may have been required to pay and the expense incurred by the purchaser to prevent waste, as well as the rents received, shall be taken into consideration: Section 3-505, Oregon Code 1930.

All the rights and privileges attendant upon ownership is thus accorded to a purchaser at a sale upon execution except only that of indefeasibility.

We find this statement in Corpus Juris:

"If the mortgagee himself becomes the purchaser, his title at the expiration of the time, if any, allowed by law for redemption from the sale, relates back to the date of the mortgage. If a stranger becomes the purchaser, his title relates back to the date of sale in some jurisdictions, to the date of the mortgage in others." 42 C. J. p. 247, Sec. 1891 (2), Subject. Mortgages.

"A purchaser at a forced sale, such as an execution, foreclosure, bankruptcy, or the like, is taxable as to the owner; and this is so although the time to redeem has not expired or he has not fully complied with his bid." 2 Cooley on Taxation (4th Ed.) § 599, p. 1272.

The case of *Cropper v. Brown*, 76 N. J. Eq. 406 (74 Atl. 987, 139 Am. St. Rep. 770), presents an interesting discussion of the point here involved. In that case, after the sale, but before the period of redemption had ex-

pired and consequently before any deed was executed, a building upon the premises was destroyed by fire and the purchaser sought to avoid the sale. The court gave retroactive effect to the order of confirmation. The interesting feature of the opinion lies in the fact that the New Jersey decisions were conflicting, some of them holding that the delivery of the deed is determinative of the rights of parties, while others supported the holding that the deed reverted back to the sale.

Heretofore, this question does not seem to have been decided in Oregon.

Holding that the sheriff's deed reverts back to the date of the sale for the purposes of taxation, it follows that the property in question, both real and personal, was not exempt from taxation from the 6th day of April, 1932, until February 26, 1934, rendering it subject to the tax for the year 1933. The property owned by each person on the 1st day of March at the hour of 1 o'clock a. m. shall be assessed for the purposes of taxation: Section 69-231, Oregon Code 1930, as amended by chapter 142, Oregon Laws 1933, p. 158.

Plaintiffs argue that this property was dedicated to charitable purposes; that it became a public charity and, hence, a public trust is impressed upon it. A touching review of the sources from which funds were derived for this hospital appears in plaintiff's brief. It came from donations from various religious organizations and societies in four western states. The plaintiffs supplement this review with the argument that the property was forever dedicated to the public as a public trust and must be administered as such.

It is true that many contributions were made by these religious organizations and their members and patrons. We think that the operation of the hospital as a charitable institution by the Pacific Christian Hos-

pital was not a subterfuge, but an actuality, and that the good people, who were operating it, had no intention of conducting it as a profit making enterprise. In the case of *Hamilton v. Corvallis General Hospital Association,* 146 Or. 168 (30 P. (2d) 9), that question was submitted to the jury by the trial court and this court approved the action of the trial court.

■ It is true that gifts of land to charity are regarded as practically inalienable by the person or body intrusted with giving them effect except under authority of chancery: *Richards v. Wilson,* 185 Ind. 335 (112 N. E. 780).

If, however, the grant of land is in trust for a charity and no condition of reverter is coupled with the trust, and no provision is found in the grant forbidding it, the court may, if conditions have changed, in a suitable case, order a sale of the land either under its general equity power or under the statute: *The First Cong. Society of Bridgeport v. The City of Bridgeport,* 99 Conn. 22 (121 Atl. 77).

■ After the sale has been made, the moneys received therefrom are impressed with the trust and must be so applied as to carry out its purpose: 11 C. J. 354, Charities Sec. 71, note 96, citing *Albany College v. Monteith,* 64 Or. 356, 130 P. 633.

With one exception, the cases relied on by plaintiffs do not deal with the power of the court to order a sale of property devoted to charitable purposes. They declare the rule applicable to those whose duty it is to administer the trust.

The case of *O'Brien v. Physicians' Hospital Association,* 96 Ohio St. 1 (116 N. E. 975, L. R. A. 1917F, 741), cited by plaintiffs, does not deal with the power of the court, where conditions have changed, to order a sale of property dedicated to public charity. It holds that

if such an institution fails to administer the property in accordance with the trust impressed upon it, "the remedy is not by placing this property upon the tax duplicate, but by action to enforce a proper administration of the trust, or the revocation of its charter for abuse of its corporate franchise, and the appointment of another trustee to administer the trust." It will be noted that no judicial sale, as in the case at bar, is involved in this Ohio case.

No judicial sale by reason of changed conditions is considered in the matter of the application for judgment against lots 8 and 9 in block 212, in Nelson's addition to the city of Minneapolis for taxes of 1878 thereon, known in the official report as *County of Hennepin v. Brotherhood of the Church of Gethsemane,* 27 Minn. 460 (8 N. W. 595, 38 Am. Rep. 298), also cited by plaintiffs. It is there held that under the facts there shown lots adjacent to the buildings used for hospital purposes are exempt from taxation.

In *Widows' and Orphans' Home of the Odd Fellows of Kentucky v. Commonwealth of Kentucky,* 126 Ky. 386 (31 Ky. L. Rep. 775, 103 S. W. 354, 16 L. R. A. (N. S.) 829), also cited by plaintiffs,

"The one question arising for adjudication upon the record * * * * * is whether or not the property of the appellant corporation is immune from taxation under that provision of § 170 of the Constitution which exempts 'institutions of purely public charity.' In other words: Is the appellant corporation an 'institution of purely public charity?' "

So, too, in the cases of *Sisters of Third Order of St. Francis v. Board of Review of Peoria County,* 231 Ill. 317 (83 N. E. 272, and *Trustees of Kentucky Female Orphans' School v. Louisville,* 100 Ky. 470 (19 Ky. L. Rep. 1091, 36 S. W. 921, 40 L. R. A. 119), cited by plain-

tiffs, the propriety of judicial sale of property once dedicated to charity is not involved.

Upon oral argument, plaintiffs also cited *Bliss v. Linden Cemetery,* 81 N. J. Eq. 394 (87 Atl. 224). This is the only case cited by plaintiffs dealing with the propriety of disposing of the assets of a charitable corporation by judicial action. This case was presented upon a motion for an injunction and the appointment of a receiver for a cemetery association organized under the Rural Cemetery Act of New Jersey upon the ground of insolvency of the association, and upon the further ground that it had been guilty of a large number of ultra vires acts. The court held that the bill was defective for lack of parties: (1) the attorney general, (2) the present board of trustees, and (3) the holders of the land purchase shares. At the option of complainants, leave was given to amend their bill by bringing in the parties suggested and to renew the motion upon notice to all parties. In that case, the court clearly recognizes the distinction between the property of an insolvent charitable corporation and the fund or surplus after payment of its debts. The court say:

"It [the charitable corporation] has no shareholders among whom the surplus, after payment of debts, can be divided. If the trust fails for lack of objects, or for any other cause, the fund will yet be administered by this court, if necessary, under the cy pres doctrine; and, if there is no trustee to hold the fund, this court will appoint one and give directions for the perpetuation of the charity. It may be that in administering the affairs of an insolvent charitable corporation some of the procedure which applies to insolvent business corporations might profitably be used, but when the obligations are paid, and there remains a fund, such fund cannot be disposed of or used for any purpose except the purpose of the charity to which it was originally devoted."

It will be seen that the New Jersey court here recognizes the authority of the court to dispose of the property where conditions have changed, and adheres to the principle that the fund remaining, if any, cannot be devoted to any other purpose than that of the original charity.

■ In the oral argument, reference was made to the constitutional provisions that taxes should be uniform and that equal protection of the law should not be denied. It was suggested by plaintiffs that the exemption accorded to corporations under subdivision 3 of section 69-104, supra, must be extended to individuals in order to avoid conflict with these constitutional provisions.

We could dispose of this suggestion by remarking that, if the statute in question is unconstitutional, then there is no exemption whatever available to plaintiffs with respect to the property in suit.

The constitutionality of this exemption statute has been upheld in *Corporation of Sisters of Mercy v. Lane County,* 123 Or. 144 (261 P. 694), and we do not recede from that holding. Plaintiffs cite *Redfield v. Fisher,* 135 Or. 180 (292 P. 813, 295 P. 461, 73 A. L. R. 721), to the point that a statute imposing a tax upon an individual which is not imposed upon a corporation is unconstitutional. In that case it is said that,

"The validity of numerous tax statutes has been sustained which dealt with the individual in a manner different from the corporation yet in all those instances the reason for the different treatment was made apparent."

One obvious reason for exemption of the property of charitable corporations from taxation as distinguished from the property of individuals is that such a corporation is subject to the supervision of the courts

at the instance of the attorney general (11 C. J. Charities, sec. 84, p. 366) whenever it seeks to devote its property to other than the purposes for which it was organized, while an individual is not subject to such supervision, but may exercise plenary control over his property and without notice or explanation make any change or changes he may wish. A corporation of the character here discussed cannot thus alter its purpose without at least amending its articles of incorporation and thereby destroying its right to the statutory exemption.

The decree of the circuit court is modified by declaring invalid and enjoining and restraining the collection of the taxes against the property here involved except those assessed for the year 1933, which are hereby decreed to be valid and enforceable.

Neither party should recover costs or disbursements herein, either in this court or the circuit court.

It is so ordered.

CAMPBELL, C. J., and BELT, J., not sitting.